WM. A. BURKE, ADMINISTRATOR OF THE ESTATE OF WM. A. BURKE, JR., v. CAROLINA COACH COMPANY AND DR. L. B. CAPEHEART.

(Filed 27 November, 1929.)

1. **Highways B c—Parking on highway in violation of C. S., 2621(66) must be proximate cause to be actionable.**

   Negligence in parking an automobile on a public highway in violation of C. S., 2621(66)), to be actionable must be a proximate cause of the injury in suit, and where the plaintiff fails to show by his evidence that such violation was a proximate cause of his injury, a judgment as of nonsuit is properly allowed.

2. **Highways B c—Speed on highway must be proximate cause of injury to be actionable.**

   Where in an action to recover damages for the killing of plaintiff's intestate alleged to have been negligently caused by the driver of defendant's bus in exceeding the statutory speed limit, C. S., 2618, it is required that the negligence complained of must have been a proximate cause of the injury, and where the evidence discloses that the accident occurred when the driver of the car in which the plaintiff's intestate was riding as a guest attempted to pass a car parked on the highway, and that it was struck by the bus on the side of the road properly and lawfully occupied by the bus, with conflicting evidence as to the speed of the bus, and that when the bus stopped it was almost entirely off the hard surface, and that it stopped within its length, and that after the accident the parked car was about the rear of the bus: *Held,* the sole proximate cause of the accident was the improvident attempt of the driver of the car in which the intestate was riding to pass the parked car, and a judgment as of nonsuit was properly entered.

3. **Highways B a—In this case held: contention of plaintiff that defendant was on wrong side of road not supported by allegations or evidence.**

   Where there is no allegation in the complaint in an action to recover damages for the negligent killing of plaintiff's intestate that the defendant's bus which collided with an automobile in which the intestate was riding as a passenger was on the wrong side of the road in violation of statute, the testimony of a witness upon this point is insufficient to deny defendant's motion as of nonsuit when taken in its related parts it tends to show to the contrary.

CIVIL ACTION, before *McElroy, J.,* at September Term, 1929, of FORSYTH.

The plaintiff is the duly appointed administrator of W. A. Burke, Jr., a boy fourteen years of age, who was killed on 16 July, 1928, as the result of a collision between a bus owned and operated by defendant, Carolina Coach Company, and an automobile driven by Mrs. A. B. Pritchard. Plaintiff's intestate was a guest in said automobile, sitting on the back seat at the time of the collision.

Plaintiff alleged that the car driven by Mrs. Pritchard was traveling along highway No. 10 toward Winston-Salem, and had reached a point between Mebane and Graham, approaching a car owned by the defendant, L. B. Capeheart, which was also headed west and parked on the highway. Plaintiff further alleged that the defendant, Capeheart, had parked his car in violation of the law, and that "said Mrs. A. B. Pritchard, necessarily in proceeding along the highway, had to attempt to pass to the left of defendant's (Dr. L. B. Capeheart's) automobile; that while she was attempting to do so, in the exercise of due care, the motor bus of the defendant, Carolina Coach Company, being operated at an unlawful and excessive rate of speed, as above set forth, collided with the automobile in which plaintiff's intestate was riding; that as a result of said collision plaintiff's intestate received injuries, from which he died in less than two hours thereafter." The bus was proceeding from Greensboro toward Durham, and, therefore, in an opposite direction from that in which the car driven by Mrs. Pritchard was traveling.

Plaintiff further alleged that the death of his intestate was proximately caused by the negligence of defendant, Capeheart, "in unlawfully parking his automobile in the public highway," and also as a result "of negligence of defendant, Carolina Coach Company, in operating its motor bus at an unlawful rate of speed and in failing to keep a proper lookout."

The defendants offered no evidence.

The only negligence alleged against the defendant Capeheart was that he had unlawfully parked his car upon the highway.

A witness for plaintiff testified with respect to the Capeheart car as follows: "When I heard the collision I went to the window and looked out, and then hurried up there. When I looked out the window I just saw there was a wreck, and I hurried up there. I saw a car stopped on the highway before the wreck. As well as I remember, it was something between an orange and a yellow car. As well as I remember, the driver of that car had his left arm out of the window, doing something to his windshield. That car was stationary, about half way on and half way off the hard surface of the road. There is room enough there for a car to park off the hard surface road on both sides of the hard surface. I didn't pay much attention to the car that I had seen parked there when I got out to the wreck, but it was to the right, facing my house, on its right, across the hard surface from the bus, about even with the bus, slightly back of it, headed toward Burlington, or Winston-Salem. . . When I got to the scene of the wreck the bus and the car (in which plaintiff's intestate was riding) were together on the bus' right side of the road. Only the left-hand back wheel of the bus was on the hard surface. . . . The road is straight in each direction from the point of

the collision for about three-quarters of a mile. . . . The dark portion of the hard surface road there is about sixteen feet wide. . . The paved portion of the highway, including the border, is about eighteen feet wide. . . . The right-hand front wheel of the bus was slightly off the shoulder, toward the ditch. The bus had started down the slope. . . . If the grade had been steep enough it would have turned over if it had gone any further down. . . . When I got there the bus was entirely off the black portion of the highway and the front wheels were entirely off the light concrete border. . . . When I got there the cars were hooked up, the left front corner of the bus was about the center and nearer to the rear of the Essex. The Essex showed that the impact was made just about the center of the Essex car with the front corner of the bus on the left-hand side. Everything that I saw was on the extreme right side of the highway going toward Mebane and as near the ditch as a car could be driven. . . . The orange or yellow car (Capeheart's car) . . . was about opposite or a little past the center of the bus when I got up there. . . . At least half of it was on the dirt road. . . . The marks of the bus tire were on the hard surface, the asphalt, out in the road, for about the length of the bus, straight from the back tire. I couldn't say whether the bus ran more than its length after the application of the brakes. If there was more than one line of marks I didn't see them. . . . The line I saw was leading from the back wheel of the bus out toward the center of the road. It did lead more than three feet from the edge of the cement toward the center. It led to about where the bus wheel ought to have been if it had been on the hard surface, if it was traveling along in the usual and ordinary way."

Another witness for plaintiff, who was traveling in the same direction with the bus, that is, east toward Durham, testified that it was raining, and that she stopped her car to put up the windows in order to keep out the rain. While parked for this purpose a bus passed her. She testified: "My car was parked about 300 yards from the scene of the collision. I have an opinion as to how fast the bus was going when it passed me. In my opinion it was going between 45 and 50 miles an hour. It was going up grade at that time. After the bus passed me I heard the impact and collision, and I started toward the collision. . . . The road is practically straight at the scene of the wreck. My car was parked in a kind of a dip. . . . I couldn't see the collision from where I had parked my car because of the incline just in front of my car. I had to go over that incline before I could see. . . . From where I had stopped my car up to the straight-away there is right much grade. . . . I was down in the dip. There is considerable grade going up from where my car was parked going east. After you get to the top of the incline the

road is straight for something like a mile. I don't know how fast it (bus) was going, but I think it was going 45 or 50 miles an hour." Another witness for plaintiff testified: "The bus hit the Pritchard car about the back of the front seat, about half way back of the body, and the motor is in front of that. The bus was tilted on account of being driven off the road." Another witness for plaintiff testified: "I saw some skid marks there in the road from this bus. I couldn't tell you how far back of the bus, exactly, but it was at least the bus' length. They started about in the center of the road, but didn't stay in the center. It skidded over to the side. . . . It led off on the right-hand side going toward Mebane. I don't know where the mark ended. It ended under the bus. . . . There were lines from both wheels to the bus, both sets. The one on the right went off in the dirt; there were two sets of lines where it started. It started in the middle of the road, and the right-hand wheels went clear off the asphalt. I saw one line for the left wheels and one for the right. The one for the right wheels started in the center and went clear off the asphalt. The left one started in the center and followed this wheel."

At the conclusion of plaintiff's evidence the judge of the county court nonsuited the case as to both defendants. An appeal was taken to the Superior Court upon assignments of error, and the judge of the Superior Court overruled the assignments of error and entered judgment of nonsuit, from which judgment the plaintiff appealed.

*John D. Slawter and Parrish & Deal for plaintiff.*
*Hastings & Booe and Manly, Hendren & Womble for defendant.*

BROGDEN, J. The only allegation of negligence against the defendant, Capeheart, was that his car, referred to in the evidence as the Buick or orange colored car, was parked on the highway in violation of C. S., 2621 (66). There was evidence to the effect that rain was falling and that the defendant, Capeheart, had stopped his car to wipe off the windshield. There was evidence also to the effect that his car was entirely on the pavement, and there was also evidence that his car was partially on the dirt shoulder and partially on the pavement. Assuming, but not deciding, that it is a negligent act to thus stop a car on the highway to wipe off the windshield, there is no evidence that such violation of the statute was the proximate cause of the death of plaintiff's intestate. The car in which plaintiff's intestate was riding did not collide with the Capeheart car, and all the evidence was to the effect that sufficient space was left to enable the driver of the Essex car, in which plaintiff's intestate was riding, to pass the car of defendant Capeheart without injury or inconvenience. The plaintiff relies upon the case of *Dickey v. R. R.,*

196 N. C., 726, 147 S. E., 15.  It must be observed, however, that in the *Dickey case* the car in which the injured party was riding actually collided with the train standing across the street in violation of an ordinance.  So that, the principle of law declared by the Court has no application to the facts disclosed in the present record, and the judgment of nonsuit as to defendant Capeheart must be sustained.

However, the plaintiff insists that there is sufficient evidence of negligence against the defendant, Coach Company, to carry the case to the jury.  The only allegations in the pleadings with respect to the negligence of this defendant are to the effect that the bus was being driven at an excessive speed in violation of C. S., 2618, 2621 (46)a, and C. S., 2621 (51) ; and further, that the driver thereof did not keep a proper lookout. The evidence discloses that Mrs. A. B. Pritchard was driving an Essex car toward Winston-Salem, and that plaintiff's intestate was riding as a guest therein.  Plaintiff alleged as the cause of the collision that "said Mrs. A. B. Pritchard, necessarily in proceeding along the highway, had to attempt to pass to the left of defendant's, Dr. L. B. Capeheart's, automobile; that while she was attempting to do so in the exercise of due care the motor bus of defendant, Carolina Coach Company, being operated at an unlawful and excessive rate of speed, as above set forth, collided with the automobile in which plaintiff's intestate was riding; that as a result of said collision plaintiff's intestate received injury, from which he died in less than two hours thereafter."  The evidence discloses that the Essex car in which plaintiff's intestate was riding was struck by the bus about the center thereof and on the left-hand side thereof. In other words, the left-hand side of the bus struck the center of the left-hand side of the Essex car.  The evidence further disclosed that the Essex car was struck on the right-hand side of the road, traveling east toward Durham; that is to say, the collision took place on the side of the road properly and lawfully occupied by the bus and on the side that the bus is required by law to travel.  When the bus stopped it was almost entirely off the hard surface, and there was testimony to the effect that if it had rolled any further it would have gone into the ditch on its right side.  The evidence also disclosed that the bus stopped within its length, and that when the bus stopped the Essex car was hooked up to its front, and the car of defendant Capeheart was standing about the rear of the bus.

There was evidence that in a dip about 300 yards from the point of the collision the bus was running between 45 and 50 miles an hour. There is no evidence as to the speed of the bus immediately preceding the collision.  Furthermore, the fact that a heavy bus stopped on a slick surface within its own length must require a stretch of the imagination in order to support a theory that it was running 50 miles an hour at the

time of the impact. If it be conceded that the bus was violating the speed limit at the time of the injury, still the vital question involved is whether the speed was the proximate cause of the injury under the facts disclosed in the record. The theory of the collision alleged in the complaint is that the car in which plaintiff's intestate was riding was attempting to pass the Capeheart car. If so, it was struck by the bus before it completed the act of passing. Therefore, it must be manifest that the bus was perilously near the Capeheart car when Mrs. Pritchard attempted to pass. This is clearly demonstrated by the fact that after the bus stopped the Capeheart car was located slightly beyond the center of the bus.

There is no evidence as to how the injury occurred, and the mere fact of the injury is in itself ordinarily no evidence of negligence. "The breach of a statute is negligence *per se,* but there must be a causal connection between the disregard of the statute and the injury inflicted." *Ledbetter v. English,* 166 N. C., 125, 81 S. E., 1066. Again it has been held in *Chancey v. R. R.,* 174 N. C., 351, 93 S. E., 834, that "the rule was recently stated to be, that however negligent a party is, if his act stands in no causal relation to the injury, it is not actionable." The rule was further stated in *Austin v. R. R.,* 197 N. C., 321, as follows: "There is evidence that death was caused by the impact of the train, but this is not enough to make actionable negligence. Negligence is not presumed from the mere fact that the intestate was killed." In *McNeill v. R. R.,* 167 N. C., 390, 83 S. E., 704, the plaintiff's intestate was killed by a train running without a headlight in violation of the law. The Court wrote: "It is not the absence of the headlight, nor the impact of the train, which determines liability, but the impact of the train brought about by or as the proximate result of the absence of a headlight. To illustrate: Suppose one is at work on an overhead bridge, and without fault on his part he falls on the track 5 feet in front of a rapidly moving train, which is running at night without a headlight, and is killed? Here we have negligence in the failure to have a headlight; but there can be no recovery, because the same result would have followed if there had been a headlight, and its absence has had nothing to do with the injury." *Elder v. R. R.,* 194 N. C., 617, 140 S. E., 298.

In the oral argument plaintiff took the position that there was evidence that the bus was traveling on the wrong side of the road. This position was based upon the testimony of Mrs. Holland, who testified in regard to certain skid marks on the road. She said: "It started in the middle of the road, and the right-hand wheels went clear off the asphalt. I saw one line for the left wheels and one for the right. The one for the right wheel started in the center and went clear off the asphalt. The left one started in the center and followed this wheel." From these

statements it is argued that if the skid mark made by the bus, for the right wheel, started in the center and went clear off the asphalt, or that if the right-hand wheels of the bus were in the center of the road, then of necessity the left-hand wheels were beyond the center in violation of the law. This theory overlooks the next statement of witness, which is: "The left one started in the center and followed this wheel." So that, as a matter of fact, the testimony of witness clearly discloses that the skid marks for all wheels started in the center of the road. Moreover, there was no allegation in the complaint that the bus was traveling on the wrong side of the road.

Upon all the evidence we are of the opinion that the judgment of nonsuit as to both defendants was correct.

Affirmed.