ODOM, J., takes no part, not having heard the arguments.

**LAVERGNE v. PEDARRE et al.**

No. 1529.

Court of Appeal of Louisiana. First Circuit.

Dec. 31, 1935.

See, also, Pitts v. Pedarre (La.App.) 165 So. 22; Fischer v. Pedarre (La.App.) 165 So. 22.

C. C. Bird, Jr., Fred A. Blanche, both of Baton Rouge, for appellant.

Taylor, Porter & Brooks, of Baton Rouge, for appellees.

LE BLANC, Judge.

An automobile collision which occurred at about 10 o'clock at night on January 25, 1933, at the point where Jefferson street intersects the Highland road, south of the corporate limits of the city of Baton Rouge, gave rise to several suits for damages for personal injuries as well as for other damages and expenses alleged to have been incurred by the various parties involved, all of which suits were consolidated for the purpose of taking testimony.

Besides the present which will serve as the basis for a decision in three of these, we are concerned on this appeal with the suits of Auletus L. Pitts, who also sues in his own behalf as well as that of his minor son Alvin Burkett Pitts, and of Malcolm J. Fischer. The defendants are Roch H. Pedarre and Ellsworth N. Smith and their respective public liability indemnitors, United States Fidelity & Guaranty Company and Great American Indemnity Company. We understand that there is also a suit between the two principal defendants, Pedarre and Smith, which was also decided in the lower court on the same testimony, but the same is not before

this court at present. It appears from the record in the suit of Mr. Auletus Pitts that prior to the rendition of judgment, Alvin B. Pitts, who evidently became of age, was made party plaintiff and authorized to prosecute the demand made for and on his behalf by his father, in so far as his interest therein was concerned.

Daly C. Lavergne, Alvin B. Pitts, and Malcolm J. Fischer were guests of the defendant Ellsworth N. Smith in his Ford sport-phaeton automobile on the night that it collided with the defendant Pedarre's Graham-Paige two-door sedan. The Smith car was traveling north towards the city of Baton Rouge and the Pedarre car south. Pedarre has a grocery store and his residence at the northeast corner of the intersection of Highland road and Jefferson street. He was on his way home after having attended some church social function that night and was making a left-hand turn into Jefferson street when the Smith car ran into his.

As a result of the accident, Daly C. Lavergne and Alvin B. Pitts sustained rather severe injuries, both having suffered a fracture of the skull. In addition, Lavergne suffered a number of deep cuts and lacerations about the face and also a dislocation of the semi-lunar cartilage of the left knee. Besides the injury to his skull, Pitts suffered a cut above his right brow and an injury to his left leg and ankle. Fischer's injuries were not as severe. They consisted, according to the allegation of his petition, of several cuts and gashes in his scalp and on both his legs, cuts and bruises about the body generally, and a sprained right ankle. For his suffering and injuries, he claims damages in the sum of $500; for loss of time from his classes at the Louisiana State University where he was a student, $25; for damages to his clothing, $35; and doctor's bills, $10. His total demand is for the sum of $570. Pitts, also a student at the University, claims $1,500 as damages for loss of time from his studies. He claims $2,500 for his injuries and pain and suffering caused by them; $500 for facial disfigurement; and $1,500 for impairment to the use of his leg and future danger from the fracture of his skull. His personal demand therefore totals the sum of $6,000. His father claims the sum of $392 for medical, hospital, nursing, and ambulance expenses incurred in his son's treatment. Lavergne, who also was a student at the University, claims $1,500 for one year's loss of time at school, $3,000 for pain and suffering and for the fracture of his skull and dislocation of his knee. For disfigurement, he claims $1,000, and for permanent injuries and future danger from the skull fracture, the sum of $2,000. His total demand, therefore, is for the sum of $7,500. His father claims the sum of $472.85 for medical and other expenses incurred in his treatment.

The negligence charged against Pedarre consists in his having made a left-hand turn toward Jefferson street from the Highland road in face of a fast approaching automobile, which was the Smith car, without giving any signal or warning of his intention to do so. The charge against Smith is principally fast and reckless driving on a highway that is heavy with traffic and with which he was very familiar, and in not having his car under such control as to be able to stop it when he perceived, or should have perceived, the Pedarre car turning in his path.

After the suits had been filed, the defendant Pedarre and his liability insurance carrier, United States Fidelity & Guaranty Company, settled with all three plaintiffs for so much of their respective demands as arose out of the fact that the Pedarre car was involved in the accident. Proper releases were executed and the suits dismissed as against both these defendants. The effect of that was to place the issue of Smith's negligence which had been denied by him and his insurer, as well as that of contributory negligence on the part of the plaintiffs which had been pleaded by them in the alternative, in their answers, as the only matters before the court. The plea of contributory negligence is based on the failure of the plaintiffs to have protested at Smith's fast and reckless driving, assuming that he was so driving.

On the issues as thus made, the cases, as already stated, were consolidated for the purpose of taking testimony, and, after submission, the district judge rendered judgment in each case in favor of the defendants Smith and his insurer, Great American Indemnity Company, and against each of the plaintiffs, dismissing their respective suits and rejecting their demands. He assigned no written reasons for judgment, and the record does not show whether he found Smith free of negligence in the operation of his car or whether he sus-

tained the plea of contributory negligence. All plaintiffs have appealed.

Highland road is the principal thoroughfare which leads from the city of Baton Rouge to Louisiana State University. It is a paved highway, being part of the state highway system, and is designated as State Route 63. Jefferson street has a graveled surface and leads into Highland road from the east, but it does not continue across Highland road on the west. According to Mr. John J. Mundinger, civil engineer, the distance from the south city limits of Baton Rouge to the University grounds entrance is approximately 7,800 feet, and Jefferson street is almost exactly in the middle between those two points. The Pedarre store and residence, as before indicated, are situated at the northeast corner of the intersection of the street with Highland road. According to Mr. Mundinger, Highland road is 27 feet wide from curb to curb, and is practically straight from a point about·300 feet north of the University to several hundred feet north of Jefferson street. It has some slight grade, but not enough to affect the driving of an automobile.

The first point urged for consideration is to the effect that the· community beyond the city limits of Baton Rouge through which Highland road passes being thickly populated, the speed limit of twenty-five miles per hour which applies to unincorporated towns and villages under the provisions of the state highway regulatory act (Act No. 21 of 1932) governs, and as it is conceded that Smith was going at a speed in excess of that rate, he was violating the statute and this constituted negligence on his part. The record does disclose that the section through which this highway passes is well settled and its population exceeds that of several unincorporated villages and certain towns we have in mind; nevertheless nowhere in the record do we find that it is defined in any other way than the "Highland road." No mention whatever is made of any village or town along the road and especially in the neighborhood where this accident occurred. It is to be noted that the state statute in rule 4 under section 3, paragraph (c), in prescribing the "Rate and Speed of Certain Vehicles" and in fixing the rate of ·twenty-five miles per hour, made it apply specifically to "highways and bridges of this State, within or through any town or village not incorporated."

We find no special provisions such as this regulating the speed of motor or other vehicles in those sections on highways leading out from incorporated city limits, and in the absence ·of any we hold that the general speed rule as laid down in paragraph (a) of rule 4 applies. That is the now rather familiar rule that no one shall drive or operate a motor or other vehicle on the highways of the state "at other than a careful, prudent, reasonable and proper speed, having due regard to the traffic, surface and width of the highway, the location and neighborhood, and, any other conditions or circumstances then existing, and no person shall, under any circumstances or conditions, drive any vehicle upon the public roads, highways or bridges of this State, at such a speed as will endanger the life, limb or property of any other person."

There is a considerable amount of testimony in the record concerning signposts along the highway calling attention to the speed limit, but as it appears certain that whatever signs may have existed before had, in some manner not explained, disappeared about a whole year prior to, and there were no such signs at, the time of the accident, we do not see how any consideration can be given to that matter in this case.

The next question to be determined, therefore, is whether under the circumstances and conditions existing at the time of this accident, giving due consideration to the surface and width of the highway as well as the traffic thereon at the time, and also the location of the neighborhood, Smith was operating his car in a careful and prudent manner and at a reasonable and proper speed.

On the evening of the accident there had been some athletic event taking place at the gymnasium at Louisiana State University, which Smith as well as all three boys plaintiff herein had attended. After the contests were over, some of these boys who had escorted young girls from the University to the gymnasium had walked back with their escorts to the girl's dormitory buildings on the grounds and then had walked to the corner where Dalrymple drive intersects Highland road, at which point it seems customary for the students to await passing automobiles so that they may hail them for a ride into the city. Fischer, Pitts, Lavergne, and another student, James Hickey, were standing to-

gether when Smith drove along in his car and was hailed by them. He stopped at once to let them get in, and they seated themselves as follows: Lavergne in the front seat next to the driver, Smith and Fischer in the middle on the rear seat, between Pitts, who was on his right, and Hickey on his left.

The witnesses all seem to agree that the car started out towards the city at about thirty miles an hour and continued on at that rate until it reached a point where the road is traversed by the city canal, the road itself being bridged by a concrete culvert. The culvert, according to Mundinger's testimony, is 1,175 feet from the intersection of Jefferson street and the Highland road. This same witness fixes the distance from the city limits to the University at approximately 7,800 feet and Jefferson street as about midway between these two points. Jefferson street therefore must be approximately 3,900 feet from the University, and as it is but 1,175 feet from the city canal, the distance from the University to the canal must be approximately 2,700 feet. We find from the testimony of Lavergne and Pitts as well as that of Hickey, then, that for more than half a mile the car had not been going faster than thirty miles an hour. Fischer fixes it at about thirty five miles. For all of that distance, there was not another automobile seen on the highway. Surely, a speed of thirty miles per hour maintained for more than half a mile on a paved highway without meeting a single vehicle cannot be held to constitute fast and reckless driving of an automobile, and up to this time, therefore, it cannot be said that Smith was negligent in the operation of his car.

Pitts and Fischer testify that as the car went over the culvert at the city canal, Smith speeded up to pass another automobile that was ahead of him. None of the other occupants of the car say anything about passing a car, but the preponderance of the testimony is that at this point Smith did accelerate his speed to a rate which we believe can fairly be stated from the evidence as being between forty and forty-five miles per hour. He maintained this speed until, when within probably 100 yards or more from Jefferson street, he observed the Pedarre car which was coming south toward his car and leading another car not far from it, swerve slightly from its path

on its right-hand side of the road over to the left, and he immediately applied his brakes reducing his speed. The four headlights on these two approaching cars were shining, and it was easy to discern the movement of the Pedarre car. Hickey and Fischer made the same observation regarding the Pedarre car and the application by Smith of the brakes of his car. Lavergne and Pitts both claim that the effect of the injuries received by them was to make them forgetful of all that happened from the time the Smith car passed over the culvert and picked up speed.

Smith's action in applying his brakes on noticing the movement of the Pedarre car is an indication of his attention rather than lack of it, or of a failure on his part to keep a proper lookout in driving his car.

Almost as fast as it had veered from its path to the left of the highway, the Pedarre car turned back to the right into its lane of travel, and on perceiving this Smith released his brakes and continued toward the intersection. Asked if, after having applied his brakes, he had time in which to stop his car before reaching the intersection, he answers that he did but did not do so and continued at his same rate of speed for the very good reason that the car which had swerved to the middle of the road had gone back to its right-hand side again. It seems reasonable that he might have assumed that the driver of that car, if he ever had the intention of going across the highway near that point, had changed his mind on observing another car approaching the intersection and that he could pass by it in safety.

It is difficult even to estimate the time that was consumed in taking this precaution when Smith first observed the Pedarre car deflecting from its course until he released his brakes, but it must be borne in mind that during this time, whatever it was, his car was moving forward and no doubt had covered a considerable part of the distance from where it was when he made that observation. That point we have fixed at 100 yards from Jefferson street. According to the witness Hickey, when they were within 30 or 35 feet of Jefferson street, the Pedarre car made a left-hand turn in front of them and the wreck occurred. The width of Jefferson street is shown to be 29 feet, and it is also shown that the collision took place about 4 feet north of the south curb of Jefferson street. Adding these 33 feet, to Hickey's

estimate of 30 or 35 feet from the street itself where the Smith car was, would place the two cars between 63 and 68 feet apart at the time of Pedarre's left-hand turn. Fischer fixes the distance between the two cars at this moment at between 35 and 50 yards. On cross-examination, however, he is asked, when referring to the moment the Pedarre car cut in front of the Smith car: "Were they not so close together that there was nothing Smith could do to avoid the collision?" And he answers: "I don't think that he could have done anything at the time." Smith's testimony is somewhat indefinite as to the distance he was from the other car when it started to turn. We understand him to say, however, that he had entered the intersection and that the Pedarre car was about 35 feet when he "swung" his car to the left in front of him. Pedarre's testimony is that he started to make the turn at an angle, about 45 feet from the intersection, and that at the time, Smith's car was about 300 feet from Jefferson street. Allowing 29 feet more, the width of Jefferson street, he would make the distance between the two cars at that moment some 374 feet. His estimate of the distance is so far apart from that of all the other witnesses that we believe he is bound to be mistaken. In our attempt to reconcile the testimony of the three other witnesses on this important point, we are disposed to establish as a fair estimate the distance between the two cars at this dangerous moment at between 65 and 70 feet, in which, going at a speed of between forty and forty-five miles per hour, it was impossible for Smith to avoid running into Mr. Pedarre's car despite his every effort to do so.

■ It is strongly urged that had Smith been going at a lesser speed, even in the distance allowed, he could have been able to bring his car to a complete stop before running into the Pedarre car, or,. if not a full stop, at least to such a reduced speed as would have made the impact so light that no damages would have resulted. There can be no doubt about that, and had Smith been going at the rate he was in violation of the speed limit law and because of such speed been unable to stop his car in time, his violation of the law could then be said to have constituted negligence, as it would have been a strong contributing factor to the accident. But we have found that he was not bound by any speed-limit regulation other than that prescribed under the general rule, being rule No. 4, section (a), of the State Highway Act, and which required of him only that he operate his car at a careful and reasonable speed, having due regard to the traffic, surface and width of the highway, and other conditions existing at the time. Taking all these matters into account, the straight, level surface of the highway, its width, etc., the absence of any traffic save the two approaching cars, the fact that the Pedarre car had, after veering from its course the first time, resumed the regular lane of travel leading Smith to assume that it would remain on its right-hand side of the road, warranted the assumption on Smith's part that he had an open road ahead of him and could proceed at the rate of speed he was traveling. Rather significant it is that during the whole course of their travel with him from the time they entered his car, not one of the occupants uttered a word of protest or in criticism of the manner in which he operated it.

■ Our deliberate consideration of the testimony in these cases as well as the surrounding facts and circumstances leaves our minds with the definite impression that it was the sudden and abrupt left-hand turn made by the Pedarre car without any warning sign on the part of the driver, after having just before given an indication that he would act to the contrary, which was the direct, proximate, and the producing cause of this unfortunate accident, and that Smith is not to be blamed for it.

The conclusion we have reached makes it unnecessary for us to pass on the plea of contributory negligence urged by the defendants.

The judgment appealed from in this case being found correct, the same is affirmed, at the costs of the plaintiff-appellant.