CALVIN C. CLINE v. SIDNEY EUGENE ATWOOD AND BUFORD B. SCOTT.

(Filed 4 May, 1966.)

**1. Evidence § 54—**

Where plaintiff introduces in evidence a part of the adverse examination of his adversary he makes his adversary his witness, and while plaintiff retains the right to contradict his adversary by the testimony of other witnesses, plaintiff is not allowed to impeach his adversary by attacking his credibility.

**2. Automobiles §§ 41c, 43— Evidence held insufficient on issue of negligence of motorist confronted by vehicle approaching on wrong side of road.**

In this action by the passenger, plaintiff introduced the adverse examination of the driver of the car in which he was riding which tended to show that the driver was traveling on his right side of the highway at a lawful speed, and that when an oncoming vehicle was some 100 feet away the driver thereof turned left in his lane of travel, that plaintiff's driver thought the oncoming vehicle was turning into a filling station, and that the driver of the car in which plaintiff was riding turned left to avoid a head-on collision, but that the oncoming vehicle hit his car on its right-hand side. Plaintiff also introduced the adverse examination of the driver of the other car which was insufficient to contradict the testimony of plaintiff's driver as to how the accident occurred, but did give ambiguous testimony that plaintiff driver was traveling at excessive speed. *Held:* Even conceding evidence that the speed of plaintiff's driver was excessive, the evidence discloses that the negligence of the other driver was the sole proximate cause of the accident, and the motion to nonsuit entered by plaintiff's driver should have been allowed.

MOORE, J., not sitting.

APPEAL by defendant Scott from *Johnston, J.,* January Session 1966 of FORSYTH.

The accident involved herein occurred on State Highway 67 about four miles west of Winston-Salem. Plaintiff Cline and the

defendant Scott were regular employees of Bassick-Sack in Winston-Salem, and on 8 May 1964 were working on the second shift, which ended at 10:30 P.M. These parties had been commuting to their place of employment from their homes in Yadkin County for a number of years, one driving his car one day and the other the next day. On 8 May 1964 the defendant Scott was driving his 1963 Ford automobile and the plaintiff Cline was sitting to his right on the front seat of the car. Highway 67, where the collision occurred, runs in an east-west direction. The road was "pretty straight" and level for about one-half mile. An Esso filling station was located on the north side of the road and a little farther west a Phillips 66 filling station was located on the south side of the highway. The defendant Scott was traveling west on the said highway at a speed of approximately 50 to 55 miles per hour, according to his evidence, and defendant Atwood was driving his 1955 Ford truck in an easterly direction at a speed of 30 to 35 miles per hour according to his evidence. The collision occurred about 11:05 P.M. at or near the entrance to the Esso filling station. The weather was clear and the road was dry.

The plaintiff introduced in evidence the adverse examination of the defendant Scott. Scott in this examination testified that the road was straight and he could see up the road for half a mile; that he saw the Atwood truck coming all the way up the road; that he noticed Atwood turn into his (Atwood's) left lane and figured he was going to the Esso station. Scott was asked if Atwood was on his (Scott's) side of the road the whole time he was coming and Scott answered, "The whole time," but he immediately corrected his answer and said, "He was on his (Atwood's) side when I first saw him all the way down the road, just as straight as you ever saw. I was, maybe, 100 feet from him when he first turned to the other side of the road. * * * when I saw him turning, the only thing I had time to do, I remember letting up on the gas and that's it. * * * I turned * * * across a little bit just to keep from hitting him head-on. Yes, I turned over * * * to my left. It's two lanes with a white line in the middle. * * * Well, my car was over the line some when the cars came together; just a very little the front end was over it. The back end wasn't over it * * *. Yes, I say the front end of my car at the time it was hit was a little bit over to the south side of the dividing line * * *."

According to the evidence, the Atwood truck hit the defendant Scott's car at the windshield on its right side near the door. The evidence further tends to show that as defendant Scott turned his car to the left in an effort to avoid a head-on collision, the defendant Atwood also turned his truck to his left and hit the defendant

Scott's car as stated above. After the collision the front end of the defendant Scott's car was facing north about half-way across the south lane, with the rear end of the car off the pavement. The defendant Atwood's truck was in the northern lane (Atwood's left-hand lane).

Plaintiff likewise introduced in evidence the adverse examination of the defendant Atwood. Atwood testified: "I was out sick for two weeks before the accident occurred. I had not worked for two weeks. I was going home at the time the accident happened. I had been up to Green Park Tavern about one and one-half miles from where the accident occurred. I had half a glass of beer at the tavern. I had been there about an hour. * * * Yes, I was sick with arthritis." It appears from the evidence of this witness that he was at the Green Park Tavern earlier that evening. He got another party, he testified, to buy him either six or twelve cans of beer on his first visit, because, he testified, "The man who ran the place told me he thought I was drinking too much and he told me I ought to leave * * *." This defendant further testified: "* * * Before the accident happened * * * I was coming on down the road there was a '63 Pontiac behind me, and I slowed up * * * so he would go around me * * * I proceeded on down the road about 35 or 40— I might have got up to 50 miles an hour before I seen * * * Mr. Scott coming, and I slowed down to approximately 30 or 35 miles an hour and stayed on my side of the road all the way and I dimmed my lights about 500 or 600 feet before I got to him and he did also, and I could tell he was going pretty fast, so I was watching my side of the road; in fact, I was concentrating on my side of the road more than anything else, and about 250 feet is the last I remember because I was looking on my side of the road." On cross-examination this witness testified: "I have no recollection at all what happened that last 250 feet. No, sir, I don't know whether I went straight, or went across the road, or to the right or to the left or what." The witness admitted he had been convicted of driving while under the influence of intoxicants, for reckless driving, and other traffic offenses; that the patrolman investigating the collision involved herein told him that he was under the influence of intoxicants but that the patrolman did not file any charge against him. The witness further testified: "I saw the other car (Scott's car) probably a mile and a half or two miles during the time it was approaching me. Well, I saw it come over the hill and go down in the valley and come over the next hill on the level stretch. Yes, I do have an opinion satisfactory to myself as to how fast that car was travelling. Q. What is that opinion? A. You mean how fast I think he was going? Q.

Yes. A. I'd say 90 or better. Now, that's just my opinion how fast I think he was going."

Mr. Woods, the State Highway patrolman who investigated the accident, testified that shortly after the collision the defendant Scott said: "We were coming up the road and he (Atwood) was headed straight toward me on my side of the road. He wasn't completely on my side to begin with, he was just easing over on my side and I wheeled over to miss him and he just came * * * right into the side of me. I believe I was completely on his side of the road when we collided."

The patrolman did not talk with the defendant Atwood at the scene of the collision, but testified that he detected some odor on his breath, a moderately strong odor of alcohol. He later talked to Atwood at the hospital and testified that he asked Atwood if he had been drinking, that he replied "Yes." He said he had been to Old Town Superette, that "some Negroes gave me a drink of whiskey, but I don't remember whether I took it or not."

The plaintiff did not recall anything about the collision. The jury answered the issues of negligence against both defendants and awarded plaintiff substantial damages. Judgment was entered on the verdict. The defendant Scott appeals, assigning error.

*Elledge & Mast for plaintiff appellee.*
*Deal, Hutchins and Minor for defendant Scott, appellant.*

DENNY, E.J.   This appellant assigns as error the refusal of the court below to sustain his motion for judgment as of nonsuit made at the close of the plaintiff's evidence and renewed at the close of all the evidence.

The plaintiff alleges in Paragraph 3 of his complaint that as the defendant "Sidney Eugene Atwood operated his 1955 Ford truck in an easterly direction toward the approaching Ford, he pulled his truck over into the lefthand or northern lane of traffic. As the two vehicles approached each other in the northern lane, both the defendant, Buford Scott and the defendant, Atwood, suddenly cut their vehicles toward the southern lane of the highway, thereby causing a violent collision in which both vehicles were totally destroyed and in which the plaintiff Calvin C. Cline was seriously injured * * *."

In Paragraph 5 of the complaint the plaintiff alleges, among other things, that Atwood "was operating his truck while he was under the influence of intoxicating liquor to such an extent that his physical and mental faculties had been appreciably impaired, in violation of G.S. 20-138; that he was driving upon the highway

without keeping a proper lookout * * * and without keeping the vehicle which he was driving under proper control; he failed to turn from the path of the approaching vehicle until it was impossible to avoid a collision * * *."

Among the plaintiff's allegations with respect to the negligence of defendant Scott, it is alleged that Scott "failed to turn his automobile from the main travelled section of the highway onto the wide shoulder and driveways which were quite ample and safe when he knew or should have known that such failure would bring injury to his passenger, the plaintiff * * *."

The plaintiff offered in evidence the adverse examination of the defendant Scott, which examination was taken before the trial. When this adverse examination of Scott was introduced in evidence, the plaintiff made him his witness and represented that he was worthy of belief. *Powell v. Cross,* 263 N.C. 764, 140 S.E. 2d 393; *State v. Tilley,* 239 N.C. 245, 79 S.E. 2d 473. A party does not make his adversary his witness by taking his adverse examination, unless he offers the adverse examination, or part of it, in evidence at the trial. *State v. Tilley, supra.* Furthermore, when a plaintiff makes a party in the litigation his own witness, he is not allowed to impeach him by attacking his credibility, but retains the right to contradict him by the testimony of other witnesses whose testimony may be inconsistent with his. *Helms v. Green,* 105 N.C. 251, 11 S.E. 470; *State v. Tilley, supra.*

What does the testimony of the defendant Scott tend to show on his adverse examination? The evidence tends to show that the collision occurred on a straight, level portion of Highway 67 and that the defendants could see the respective vehicles involved approaching each other for about one-half mile; that defendant Scott was traveling west in the northern lane of the 22-foot paved highway at a speed of about 50 or 55 miles per hour; that the defendant Atwood was traveling eastwardly in the southern lane of said highway (at a speed of 30-35 miles per hour according to Atwood's testimony); that when Atwood's truck was about 100 feet from defendant Scott's car, Atwood turned his vehicle into Atwood's left lane in front of Scott's car. Scott further testified that when Atwood turned his truck to Atwood's left, he thought he (Atwood) was turning into the Esso station. Scott further testified that when he saw Atwood's truck approaching him in his, Scott's, lane of travel, less than 100 feet away, he turned his car to the left in an effort to avoid a head-on collision; that not more than half of Scott's car had crossed the center line to Scott's left when Atwood's truck ran into the Scott automobile on its right-hand side near the windshield and the right door.

Atwood's adverse examination was also introduced in evidence by the plaintiff, and Atwood testified that he recalled nothing that occurred after he reached a point about 250 feet from Scott's car, and gave as his reason for not knowing what happened, "because I was looking on my side of the road." Therefore, Scott's evidence that Atwood crossed into the northern lane in front of Scott's car when the vehicles were only about 100 feet apart is uncontradicted. Moreover, Atwood, just prior to testifying with respect to the speed of the Scott car, had testified on cross-examination that "(I)t's hard to tell the speed of a car approaching me, too. I couldn't tell the speed, but I could tell he was going a lot faster than I was."

In the case of *Butner v. Spease,* 217 N.C. 82, 6 S.E. 2d 808, Butner was traveling in a southerly direction on the Bethania-Rural Hall highway and the Spease truck was traveling northward. The two motor vehicles were approaching each other at night on a straight, level stretch of road with the headlights visible for a distance of three-quarters of a mile. They collided at the entrance of a side road heading westward to Tobaccoville. When the Butner car approached the "mouth" of this side road, which was approximately 45 or 50 feet wide, and when the two vehicles were about 40 feet apart, the Spease truck suddenly turned to its left to enter the side road at its southern edge. The front of the Butner car struck the right side of the truck "just in front of the rear fender," knocked it over a fill and caused it to turn over several times. Spease testified the Butner car was traveling 70 to 75 miles per hour. Stacy, C.J., speaking for the Court, said:

> ". . . Indeed, the only suggestion of negligence on the part of the driver of the southbound car is the speed at which he was going. The evidence of the defendant Spease in regard to this may be taken with some allowance, because he frankly says that he misjudged the speed of the Butner car; that it is hard to estimate the speed of a car at night when it is coming towards you, and that he was practically in the act of turning when he first saw the car. Nevertheless, conceding the speed of the Butner car to be in excess of 45 miles per hour, and therefore *prima facie* unlawful, it is manifest that its speed would have resulted in no injury but for the "extraordinary negligent' act of the defendant Spease — in the language of the Restatement of Torts, sec. 447. *Powers v. Sternberg, supra* (213 N.C. 41, 195 S.E. 88). Hence, the proximate cause of the collision must be attributed to the gross and palpable negligence of the driver of the northbound vehicle. *Smith v. Sink,* 211 N.C. 725, 192 S.E. 108; *Beach v. Patton,* 208 N.C. 134,

179 S.E. 446; *Hinnant v. R. R., supra* (202 N.C. 489, 163 S.E. 555); *Herman v. R. R., supra* (197 N.C. 718, 150 S.E. 361); *Burke v. Coach Co.*, 198 N.C. 8, 150 S.E. 636; *Lavergne v. Pedarre* (La. App.), 165 So. 17."

In *Capps v. Smith*, 263 N.C. 120, 139 S.E. 2d 19, D. Capps was driving his truck in a westerly direction on a rural paved road at 45 miles per hour. The defendant Smith was driving his Plymouth automobile in an easterly direction at a speed of 60 miles per hour. Capps lost control of his truck and ran off the pavement on the right shoulder of the road, and in getting back on the road "angled across the pavement in front of defendant's car." When the truck cut back on the highway in front of defendant, the defendant was 100 feet from the truck. This Court in a *per curiam* opinion said, among other things: "If two vehicles are 100 feet apart and one of them is traveling 45 miles per hour, and the other 60 miles per hour, they must, of course, necessarily meet in less than three seconds — as a matter of fact, in approximately 0.65 second. Even if one of the vehicles were at a dead stop, the vehicle traveling 60 miles per hour would traverse the distance of 100 feet in approximately 1.14 seconds. * * * Considering all the evidence in the light most favorable to plaintiff, the motion for nonsuit was properly sustained."

Clearly the defendant Atwood created the sudden emergency with which the defendant Scott was faced. The plaintiff alleges and contends that Scott was negligent in that he did not drive his car entirely off the traveled portion of the highway onto the shoulder and driveways to his right and thus avoid the collision. Under the facts in this case, in our opinion the negligence of the defendant Atwood was the sole proximate cause of plaintiff's injury, and we so hold. *Powers v. Sternberg*, 213 N.C. 41, 195 S.E. 88; *Butner v. Spease, supra; Reeves v. Staley*, 220 N.C. 573, 18 S.E. 2d 239; *Garner v. Pittman*, 237 N.C. 328, 75 S.E. 2d 111; *Loving v. Whitton*, 241 N.C. 273, 84 S.E. 2d 919; *Capps v. Smith, supra.*

The factual situation in the case at bar is distinguishable from those in the cases of *Davis v. Jessup*, 257 N.C. 215, 125 S.E. 2d 440, and *Bryant v. Woodlief*, 252 N.C. 488, 114 S.E. 2d 241.

The defendant Scott's motion for judgment as of nonsuit should have been sustained.

Reversed.

MOORE, J., not sitting.