DAN DOLAN, MINOR BY HIS NEXT FRIEND, WILLIAM C. DOLAN, v. HELEN LYNN SIMPSON; ALEXANDER OLDHAM McCARLEY; JOHN D. Mc-CARLEY, JR., AND JOHN D. McCARLEY, III, T/A ECHO FARM DAIRY.

(Filed 3 February, 1967.)

1. Evidence § 54—

   Where plaintiff introduces in evidence the adverse examination of a defendant, plaintiff represents that the evidence is worthy of belief.

2. Automobiles §§ 43, 48— Left turn at intersection across path of approaching vehicle held sole proximate cause of intersection collision.

   Plaintiff's evidence to the effect that he was a passenger in a car traveling on a four-lane highway, that the driver stopped before attempting to make a left turn into a two-lane highway, forming a T intersection, that she then turned left across the path of a vehicle approaching from the opposite direction at 45 to 50 miles per hour when such other vehicle was only 75 feet away although there was nothing to obstruct the view of the approaching vehicle, and that the front of such other vehicle struck the right side of the vehicle in which plaintiff was riding while its rear was still blocking the other vehicle's lane of travel, *held* to disclose that the negligence of the driver of the car in which plaintiff was riding was the sole proximate cause of the collision, and nonsuit was correctly entered as to the driver and owner of the other vehicle.

3. Damages §§ 3, 14—

   The burden is on plaintiff claiming damages for permanent injury to establish the permanency of the injury by the greater weight of the evidence, and when one of plaintiff's experts testifies that he could not be

positive but that there was a likelihood that plaintiff's headaches and disability would recur, and defendant's other expert testifies that he could not state either way as to whether plaintiff had suffered any permanent injury, plaintiff has left the permanency of his injury in the realm of speculation, and the exclusion of the statutory table of life expectancy is not error.

**4. Appeal and Error § 41—**

The exclusion of testimony will not be held prejudicial when testimony of similar import is thereafter given by the same witness.

APPEAL by plaintiff from *Mintz, J.*, February 3, 1966 Civil Session of NEW HANOVER.

Action for personal injuries sustained by plaintiff in a two-car collision between Wilmington and Wrightsville Beach. In addition to other testimony, plaintiff offered the adverse examination of defendants Simpson and Alexander Oldham McCarley. Defendants offered no evidence.

Plaintiff's evidence tends to show: On October 7, 1960, about 7:30 p.m., plaintiff, then three years old, was a passenger in the Plymouth automobile which his grandmother, defendant Simpson, was operating in an easterly direction on Oleander Drive, approaching its intersection with Hawthorne Drive, a servient road. Oleander Drive, which is also U. S. Highway No. 76, runs east and west with two lanes for travel in each direction. Hawthorne Drive is a two-lane, rural paved road interlinking with Oleander on the north to form a T intersection. The traveled portion of Oleander is 44 feet wide; including shoulders, its entire width is 60 feet. The traveled portion of Hawthorne is 22 feet wide. At the intersection visibility is two miles in either direction, and, at that time, the maximum speed permitted by law was 55 MPH. The intersection is not controlled by electrical signals. The road was wet and it was drizzling. The weather, however, did not interfere with visibility. Defendant Simpson approached the intersection in the inside lane and attempted a left turn into Hawthorne. At the same time, defendant Alexander Oldham McCarley, operating a Chevrolet station wagon owned by defendants John D. McCarley, Jr., and John D. McCarley, III, was approaching the intersection from the east in the outside lane for westbound traffic. As the front of the Simpson car entered Hawthorne Drive, there was a collision between the two vehicles on the extreme right in the McCarley lane of travel. The front of the station wagon hit the right side of the Simpson car, damaging it from the front door back. The investigating officer found debris scattered over a wide area with chrome strips lying on the east edge of Hawthorne Drive.

Defendant Simpson's version of the accident: Before she made

the left turn, she came to a complete stop in Oleander Drive and looked afore and aft. She saw nothing at all coming. With her "blinking lights" on, she made "a curved turn" into Hawthorne. At the time of the collision she was not going 10 MPH. After starting to turn and crossing the yellow center line of the highway, she saw the lights of the approaching McCarley vehicle for the first time. She said, "The road is level. It is a nice road. You can see the headlights of approaching cars for a long way down that highway."

Mrs. Simpson told the investigating officer that she thought the McCarley car was far enough away for her to make the turn and that it appeared to be traveling at a higher rate of speed than she had figured.

Alexander Oldham McCarley's version of the accident: He approached the intersection in the outside, or northernmost, lane for westbound travel at a speed of 45-50 MPH. He observed the lights of the Simpson car in a group of approaching headlights. He first saw the automobile itself when it started a long sweeping turn in front of him, when he was about 50 feet from the intersection and when the two cars were about 75 feet apart. He applied his brakes, blew his horn, and pulled to the right, getting two wheels off the pavement onto the shoulder. Notwithstanding, he hit the Simpson vehicle in the right side near the center when its front end was a few feet into the middle of Hawthorne, and its back end was in his lane of travel. The Simpson car at no time had any light blinking on the front of it, and he did not observe Mrs. Simpson give any sort of turn signal.

Plaintiff's evidence further tended to show: At the time of the collision, Mrs. Simpson was taking a group of children home from a bowling alley. There were four in the back seat and three, including plaintiff, in front. After the accident, all were taken to the emergency room at the Cape Fear General Hospital. When plaintiff's mother saw him there about 8:00, he appeared to be completely lifeless. Although his eyes were open, he was unable to see or hear her. When she stood him up, his eyes went back in his head and he vomited. He had no cuts, but a wide red mark went from his hairline down the right side of his head. After an hour in the emergency room, plaintiff's parents took him home, where he continued to be stuporous and nauseated for four or five days before he was seen by Dr. Koseruba, a pediatrician. Dr. Koseruba found evidence of cerebral concussion, which he related to the accident. He ordered that plaintiff be kept completely quiet until he ceased to complain of headaches. Instead of improving, plaintiff's condition became worse. His headaches continued; he cried in his sleep; and he had nightmares which caused him to wake up screaming. He developed

noises in his head. He began to walk in his sleep, and other alarming habits appeared. When he began to have symptoms of a convulsive disorder, Dr. Koseruba sent him to Memorial Hospital at Chapel Hill. There he was treated by Dr. Robert Moore, a neurosurgeon, whose findings suggested that plaintiff was suffering from a convulsive disorder of the petit mal type. Anticonvulsion medications, phenobarbital and dilantin, were prescribed.

Prior to the accident, plaintiff was a healthy, normal, alert child with none of the disorders which were manifest after the accident. In Dr. Koseruba's opinion, the accident was directly responsible for the symptoms which followed it. In Dr. Moore's opinion, it is probable that the symptoms resulted from the accident.

Plaintiff was born in May 1957. At the time of the trial, he was 8 years old and in the third grade. He is a good student, but it takes him longer than it does the other children to finish his work. He has been off any sort of medication for three years, but he continues to have headaches on an average of twice a week. When they occur, he has to go to sleep. With reference to plaintiff's prognosis, Dr. Koseruba said, "I feel there is no guarantee whatever but what those symptoms can reoccur in the future." He could not be positive, but said, "There is a likelihood." Dr. Moore said that he did not know whether plaintiff had suffered any permanent injuries, and he could not state either way.

At the close of all the evidence, the court allowed the defendants McCarleys' motion for nonsuit. The jury awarded plaintiff damages in the sum of $5,000.00 against defendant Simpson. From judgment dismissing this action as to defendants McCarley and judgment that he recover $5,000.00 from defendant Simpson, plaintiff appeals.

*Burnett & Burnett and Aaron Goldberg for plaintiff.*
*R. S. McClelland and W. Allen Cobb for Helen Lynn Simpson, defendant.*
*Marshall & Williams for Alexander Oldham McCarley, John D. McCarley, Jr., and John D. McCarley, III, defendants.*

SHARP, J. Appellant's first assignment of error challenges the court's judgment nonsuiting him as to defendants McCarley. In his complaint, plaintiff alleges that the driver of the McCarley station wagon was negligent in that he operated it at an excessive rate of speed, without having it under proper control, without keeping a proper lookout, and in that he failed to yield the right of way to the Simpson vehicle, which was first in the intersection. He further alleges that McCarley's negligence, combined with that of Mrs. Simp-

son, caused the collision. Plaintiff's evidence, however, does not sustain these allegations.

McCarley was traveling in the northernmost lane for westbound traffic on a perfectly straight road at a speed of 45-50 MPH in a 55 MPH speed zone. The only evidence of McCarley's speed and the distances between the two automobiles came from his adverse examination, which plaintiff introduced in evidence. In doing so plaintiff represented McCarley as worthy of belief. *Cline v. Atwood,* 267 N.C. 182, 147 S.E. 2d 885. It is true that McCarley was approaching an intersection, but, so far as the evidence reveals, it was an unmarked intersection. In any event, Oleander was the dominant highway. At a point where visibility was two miles in each direction, and when McCarley was only 75 feet away, defendant Simpson turned her vehicle across his path. She says that before she attempted to turn left into Hawthorne, she stopped, looked to the east, and saw no approaching headlights. It was, of course, impossible for McCarley to have traveled two miles while Mrs. Simpson crossed the two westbound lanes, each eleven feet wide — even if she crossed them at an angle.

McCarley says that Mrs. Simpson gave no signal of her intention to turn. She says that she had the "blinking lights" on at the time she was making the left turn, but she did not say when she turned them on. The conclusion is inescapable that Mrs. Simpson either did not see the lights of the approaching McCarley vehicle or that, if she did, she misjudged his speed. Her report to the patrolman suggests the latter. In any event, it appears that the conduct of Mrs. Simpson, who, after coming to a complete stop, turned across the path of a vehicle traveling at 45-50 MPH when it was only 75 feet away, constituted the sole proximate cause of the collision. *Loving v. Whitton,* 241 N.C. 273, 84 S.E. 2d 919. Plaintiff's case against defendants McCarley is controlled by *Cline v. Atwood, supra,* and the cases cited therein. See also *Harris v. Parris,* 260 N.C. 524, 133 S.E. 2d 195. The nonsuit was properly entered, and plaintiff's first assignment of error is overruled.

As a basis of his contention that he is entitled to a new trial against defendant Simpson, plaintiff assigns as error the court's refusal to permit the jury to consider the mortuary table as evidence of plaintiff's life expectancy — at age 3, 65.1 years. G.S. 8-46. The burden is on a plaintiff claiming damages for a permanent injury to establish it by the greater weight of the evidence, and, unless there is some evidence of a permanent injury, the mortuary table is inadmissible. *Gillikin v. Burbage,* 263 N.C. 317, 139 S.E. 2d 753. Plaintiff's evidence left the permanency of his injuries and symptoms

within the realm of speculation. The exclusion of the table, therefore, cannot be held for error.

Plaintiff's other assignments of error relate to the exclusion of evidence which would not, in our opinion, have altered the verdict if admitted. Testimony of similar import was thereafter given by the same witness, or the excluded evidence was of negligible import when compared with other testimony pertaining to plaintiff's injuries.

In the trial below we find no error sufficient to disturb the verdict.

No error.