W. M. GASKINS, ADMINISTRATOR OF THE ESTATE OF MRS. MAUDE S. GASKINS v. DR. RICHARD S. KELLY, JR.

(Filed 7 April, 1948.)

**1. Automobiles §§ 8i, 16—**

G. S., 20-174 (a), does not apply to an unmarked cross-walk at an intersection of highways, and an instruction placing the duty upon a pedestrian to yield the right-of-way to vehicles in traversing a highway at such intersection must be held for error.

**2. Same—**

A pedestrian is required to use due care for his own safety in attempting to cross a highway at an intersection of highways, and a motorist is under duty to approach the intersection in the manner required by statute and to observe due care to avoid injury to pedestrians in the intersection.

**3. Automobiles § 18i: Trial § 31b—Charge held for error in presenting only the inferences favorable to defendant on material phase of the case.**

Intestate was struck at night by a car as she was attempting to cross the highway at an intersection after she had alighted from a bus. Defendant's evidence tended to show that intestate suddenly came from behind the bus, which was then in motion, into the path of defendant's

car, and that the impact occurred on his right side of the road. Plaintiff's evidence was to the effect that defendant had an unobstructed view for at least 200 yards and did not slacken speed before the impact, and that defendant admitted he was traveling from 45 to 50 miles per hour. *Held:* An instruction on the issue of contributory negligence to the effect that if intestate's act in suddenly coming from behind the bus into the path of defendant's car was a proximate cause of the injury, to answer the issue in the affirmative, must be held for error in failing to present plaintiff's contrary inferences from the evidence that intestate was lawfully in the intersection as defendant approached, and had the right to rely on defendant's observance of the rules requiring him to slacken speed in approaching an intersection and to observe due care to avoid injury to pedestrians within the intersection.

PLAINTIFF's appeal from *Grady, Emergency Judge,* September Civil Term, 1947, HARNETT Superior Court.

This is an action brought by an administrator to recover for the death of his intestate, alleged to have been caused by the negligence of the defendant in the operation of an automobile upon the highway.

The plaintiff's evidence, summarized, tends to show that Mrs. Maude S. Gaskins, plaintiff's intestate, was a passenger on a bus operated between Durham and Dunn on Highway No. 55. She got on at Erwin Cotton Mills around midnight to return home from her night shift at the mill and was proceeding to Currin's store, a bus stop approximately three miles east of Angier and about 18 miles from where she got on the bus. At the point to which she had purchased her ticket there is an intersection of another road with the highway—the county road crossing it. There was a highway sign indicating the approach to an intersecting road from both directions—"the customary highway sign." At that point the total width of the highway is approximately 40 feet and the hard surface 22 or 24 feet. The bus came to a stop at Currin's filling station to discharge Mrs. Gaskins as a passenger about 12:20 o'clock. The bus had crossed the county road indicated before coming to a stop, on the right hand side of the road headed westerly toward Angier, pulled off on the shoulder of the road. The bus was lighted on the inside when she got off. The headlights were on and all the marker lights—the latter lights were amber lights on each side of the bus. The driver who testified saw Mrs. Gaskins get off the bus. At the time Mrs. Gaskins got off, the left hand wheels were adjoining the edge of the hard surface and the right wheels completely off. When Mrs. Gaskins got off the bus she went toward the rear and the driver watched her until she was out of sight from the rear view mirror, then checked his passengers and proceeded to drive off. From this intersection the road is straight for approximately 200 yards west and about the same distance east, being slightly downhill east.

H. J. Hunt testified that he was a member of the Highway Patrol and the night of the occurrence above mentioned he was at the police station in Angier on duty. From information he had around 12:30 he went to the scene of the wreck. At that point, testified the witness, there is a crossing by the county road, one road going to Buies Creek and another county road leading back into the county. The road appeared to be around 24 feet wide and is regularly used by traffic.

The witness arrived at the scene, found a 1946 coach on the right hand and southwest side of the road, headed towards Coats, with the left front wheel on the hard surface, and the car had skidded and come to a stop on the right hand side of the road. On the highway opposite Currin's store there were blood spots along the road going south—the right hand side of the paved surface. When witness got to the old filling station opposite Currin's store he found where somebody had been struck, apparently in the center of the intersection on the right hand side. The distance from where the car was found to the point where the body was struck was 81 feet, and Mrs. Gaskins' body was found in front of the car. The defendant told witness that Mrs. Gaskins' body, which had been moved, had been lying where he found the blood. From the front of the car to the spot was 18 feet. Defendant stated he pulled her body from the center of the road toward the shoulder to keep anybody from hitting her.

Defendant told witnesses he had been driving approximately 45 miles per hour and that he didn't see Mrs. Gaskins until about the time he struck her. The left front fender and headlight, and hood of the car were mashed in. Witness testified as to the highway signs indicating the cross road or intersection and said the highway was straight both ways from the intersection. A driver coming south on No. 55 could see clearly for at least 200 yards. Witness described the marks of injury upon the body.

On cross-examination the witness stated that the blood first found indicated that Mrs. Gaskins was hit about two feet to the right of the center of the road. There is no sign at this place indicating where pedestrians may cross. The skid marks left by the wheel upon the braking of the automobile started around three feet west of the center line.

K. C. Matthews testified for the plaintiff that he got to the scene of the wreck shortly after its occurrence with Patrolman Hunt. Dr. Kelly stated that he had checked the body as soon as he got out of his car and found that Mrs. Gaskins was dead. He said that he was coming on the hard surface—witness learned from a ball game—and meeting the bus, and that he hit something and later found out it was Mrs. Gaskins. The defendant said he was traveling approximately 45 miles per hour and didn't see anything until he hit something.

C. B. Allred, witness for plaintiff, testified as to the condition of the body with respect to injuries—that her skull was fractured, both legs broken, and her body bruised and lacerated pretty well all over. He made inquiry of Dr. Kelly as to the circumstances under which it occurred. Dr. Kelly said he was driving approximately 45 miles an hour and didn't see Mrs. Gaskins until after he struck her. The distance of his car from the point of impact with Mrs. Gaskins was 81 feet. There were blood stains on the pavement indicating where her body had come to rest. The body was 90 feet from the point of impact to where her body came to rest.

Thomas Surles testified for the plaintiff that he lived about 300 yards from where the accident happened, down the Buies Creek road, and that Mrs. Gaskins stayed with them. He went to the scene as soon as he heard about it, about 1:00 o'clock. He testified that Dr. Kelly told him he didn't see Mrs. Gaskins, or the bus either, until after he hit her. Mrs. Surles testified for plaintiff that she lived just a short distance from Currin's store intersection and her daughter Maude (the deceased) lived there in her home with her two children. That she was working for the Erwin Mills at the time of her death. She gave further evidence as to the earning capacity and physical condition of the intestate at the time of her death.

At the conclusion of plaintiff's evidence the defendant moved for judgment of nonsuit, which was denied.

The defendant then put on his evidence, testifying for himself substantially as follows:

On the night of Mrs. Gaskins' death defendant was traveling from Angier towards Erwin; he saw that he was meeting a car and in approaching the site of the accident was traveling approximately 45 to 50 miles per hour. The car lights were in his eyes, "blurring" his sight. Plaintiff dimmed his lights, and as he passed by a woman stepped from behind the bus, which was in gear and pulling away, and into the path of his automobile; she stepped into the left front fender. Defendant noticed that he was meeting a vehicle the lights of which were shining in his face and as he passed it became aware that it was a bus, then in motion. His car was on the right side of the highway and he saw the woman a split second before he hit her; she was crossing defendant's side of the road, had come across the center line and was on defendant's side of the road. The front end of defendant's automobile had passed the front end of the bus and he was looking at the road straight ahead. His lights were burning and the mechanical condition of his car was excellent, brakes excellent.

Defendant stopped as quick as he could and took her from her place in the road, examined her and found she was no longer alive. Defendant stated that he could not say in what manner the lady was crossing the

road—all he could say was that she was coming across the road over to his side. She came out from behind the bus. Defendant denied ever having said to anybody that he did not see the bus.

On cross-examination defendant said he made the trip from Asheville to Raleigh that day, about 280 miles. That he went to the football game in Raleigh that night and after the game went to the Sir Walter Hotel and from Raleigh drove to Erwin. Defendant denied having said that the lights of the bus blinded him but said "you get a blur of the lights;" stated that he did not see the highway sign indicating that he was approaching an intersection and did not know there was one there; he had been up and down those roads many times in years gone by but was not so familiar with them because he had not been there in several years.

Currin's service station had been there for many years and was 12 or 13 miles from where defendant lived and when he went to Raleigh he went by there. He was not currently familiar with the road to Buies Creek. By the time defendant saw the bus it was in motion on the highway. He couldn't say how far he was from the bus when he first saw it.

Defendant said that when he hit the lady she was on his side of the highway, had crossed half of the highway, coming from behind the bus and that he hit her on his side but couldn't tell how far over on the side it was. The bus was changing gears in the process of moving away. Defendant had not applied his brakes at the time he struck Mrs. Gaskins and had not reduced his speed.

Defendant was not sure that she went 90 feet down the highway after being struck but did not think he dragged her; got the impression that she was on the left front fender.

"I pulled my car to the right. She was not hanging on my car. It was bound to be the force of the blow." Defendant stated that he saw the lady come out from behind the bus; that he pulled to the right after he hit her but had not changed his course until the impact. "After seeing her come out from behind the bus there was room for me to turn to my right. I could not see through the bus. I didn't hit her where the bus was; I hit her over on my right."

Mary Jane Coleman testified that she was in the car with Dr. Kelly at the time of the occurrence. They were traveling 45-50 miles per hour. That she didn't see the lady until they got parallel with the bus, and she walked from behind it on defendant's side; that defendant didn't have a chance to apply his brakes and she didn't think he applied them until after she was hit. That it all happened in a second's time. The witness testified that Mrs. Gaskins was running when she saw her. That they were parallel with the bus before she saw Mrs. Gaskins, who was distant "about as far as from here to the first man on the jury." The bus was pulling off and she was coming out from behind the bus and was about in the middle of the road, going towards Currin's store, crossing to the

other side of the highway. On cross-examination this witness stated that she first saw the bus when it was a long way ahead of them and does not believe that it was moving at the time, but by the time they got there it was. Couldn't tell whether it was parked or being operated until they got pretty close to it. Dr. Kelly kept on down the road without changing his speed and without knowing whether the bus was parked or not, driving 45-50 miles per hour and was traveling at that speed at the time he hit this woman. He had not changed his speed or direction.

H. J. Hunt, recalled, testified on re-cross examination that the defendant told him on the night of the accident that he was traveling south approximately 45-50 miles per hour and that the bus was pulling off from a parked position meeting him and that there was a woman whom he struck about the center or a little across the center of the road; that he struck her and that he didn't see her until about the time he hit her. That he immediately brought his car to a stop after the impact and that it had thrown her where he pointed out some blood was lying in the middle of the road. That he picked her up and found that she was dead.

The first blood witness found was in the intersection of the two highways, just across the center line. There were no skid marks until the car was beyond the point of impact. There was no indication that the brakes had been applied before the impact. There was a space the width of the shoulder and the width of the paved surface to the right that Dr. Kelly could have turned if he had swerved. The point of impact was in the intersection. The distance from the rear left corner of that bus to where the witness found the blood would be about 18 feet.

Other witnesses testified in corroboration of the statements made by Dr. Kelly as to how the accident occurred. The defendant rested. Plaintiff introduced no other evidence. Defendant renewed his motion for nonsuit at the end of all the evidence. The motion was denied and defendant excepted.

Issues were submitted to the jury presenting the question of negligence, contributory negligence, and damages. Plaintiff's exceptions dealt with in this opinion are to the instructions given to the jury on the issue of contributory negligence. As a matter of convenience these are reproduced in the opinion with pertinent comment rather than quoted here.

*Douglass & McMillan, John R. Hood, and J. M. Broughton for plaintiff, appellant.*

*A. J. Fletcher, F. T. Dupree, Jr., and Dupree & Strickland for defendant, appellee.*

SEAWELL, J.. In answer to the first issue the jury found that Mrs. Gaskins was killed by the negligence of the defendant as alleged in the

complaint. The exceptions brought forward challenge the adequacy and correctness of the instructions to the jury on the second issue, presenting the question of contributory negligence on the part of the intestate.

We examine first plaintiff's challenge to the following instruction to the jury on this issue:

> "It was the duty of Mrs. Gaskins, gentlemen, in crossing a highway at a point other than within a marked cross-walk, and according to the evidence here there was no cross-mark there, or within an unmarked cross-walk at an intersection, to yield the right of way to defendant's car approaching upon the roadway, and the defendant, in the absence of anything which gave or should have given notice to the contrary, was entitled to assume and to act upon the assumption that Mrs. Gaskins would use reasonable care and caution commensurate with visible conditions and that she would observe and obey the rules of the road. Now, gentlemen, that is the law."

In this instruction the court undertook to apply G. S., 20-174, to the situation presented in the evidence. That section reads as follows:

> "(a) Every pedestrian crossing a roadway at any point other than within a marked cross-walk or within an unmarked cross-walk at an intersection shall yield the right-of-way to all vehicles upon the roadway."

In support of this instruction the appellee cites *Tysinger v. Dairy Products,* 225 N. C., 717, 36 S. E. (2d), 46. The *Tysinger case,* however, did not deal with an intersection and is not in point. In the opinion of the Court, G. S., 20-174, is not applicable to the facts of this case and its presentation to the jury with the instruction based upon it must be held for reversible error. It was calculated to leave the impression on the minds of the jury that the deceased was at the time in violation of the law, or of a rule of the highway which made it her positive duty to yield the right of way, and that she was contributorily negligent in not so doing.

Of course, the intestate was required to use reasonable precautions, or due care, in attempting to cross the highway at the intersection; but the duty of yielding the right of way under the provisions of this statute could not under the circumstances be superadded so as to make her chargeable with contributory negligence or relieve the defendant from the duty of approaching in the manner required by the statute and observing due care to avoid injury to a pedestrian within the intersection. *Ward v. Bowles, ante,* 273.

The following instruction has also been made the subject of exception:

"If you find as a fact from the evidence and by its greater weight that as the defendant Dr. Kelly approached the scene of the accident the plaintiff's intestate, Mrs. Gaskins, suddenly came from behind the bus into the path of defendant's car and was struck, and that this action on the part of Mrs. Gaskins was one of the proximate causes of her injury and death, it would be your duty to answer the second issue YES."

Plaintiff's objection to this instruction is that it presents a special phase of the defendant's evidence, while contrary inferences which might reasonably be drawn from the evidence taken in its most favorable light for the plaintiff are withdrawn from consideration by the jury, and not presented here or elsewhere.

We must, in conformity with the custom of the Court, refrain as far as practicable from discussion of the evidence in sending this case back for retrial, but a direct challenge of this sort renders unavoidable some reference to the evidence appellant contends was ignored, and the inferences which he claims might be drawn from it.

The appellant points out that there is evidence tending to show that the bus was parked on the shoulder, entirely off the paved surface of the highway; that the road was straight, level, and the view unobstructed for at least 200 yards back from that point in the direction from which defendant was approaching; that Mrs. Gaskins had already crossed more than half the highway when she was hit; that defendant admitted he was traveling 45-50 miles an hour in approaching and traversing the intersection and did not slacken his speed or "swerve" from his course until he hit deceased. The appellant contends that a reasonable inference may be drawn from this evidence that Mrs. Gaskins was lawfully within the intersection as defendant approached, and had the right to rely on his observance of the rules of the highway requiring him to slacken his speed in approaching the intersection, and observe due care in avoiding the injury. Huddy, Auto, 7th Ed., p. 557; Berry, Auto, 4th Ed., p. 378; Babbitt, Motor Vehicles, 3rd Ed., pp. 1330, 1682. "Failure to anticipate omission of such care does not render him negligent." *Deputy v. Kimmell,* 73 W. Va., 595, 80 S. E., 919. It is pointed out also, that there is no evidence that Mrs. Gaskins failed to look or take other reasonable precaution upon entering the highway except that which might be inferred from the "suddenness" of her coming from behind the bus and into the pathway of the car; and since she had gone such a distance before she was hit, and in view of the speed of the approach, defendant's evidence is inconclusive as to her failure to look at the approaching car; that the matter was a jury question upon the whole

evidence.  5 Am. Jur., 758, sec. 448; *Ritter v. Hicks*, 102 W. Va., 541, 135 S. E., 601, 50 A. L. R., 1505, 1509; *Knapp v. Barrett* (opinion by *Justice Cardozo*), 216 N. Y., 226, 110 N. E., 428; *Thornton v. Cater*, 94 N. J. L., 435, 111 A., 158.

We think the exception is tenable on the face of the record and while the jury is privileged to draw such inferences from the evidence as conscience and sound judgment may dictate, plaintiff was entitled to have this phase of the evidence presented to them for their consideration.

For these reasons there must be a trial *de novo*. It is so ordered.

New trial.