## JOHN ALBERT ANDERSON v. JAMES CARTER, JR.

### (Filed 12 January, 1968.)

**1. Trial § 21—**

On motion to nonsuit, plaintiff's evidence must be taken as true and considered in the light most favorable to him, resolving all contradictions therein in his favor and giving him the benefit of every inference which can be reasonably drawn therefrom.

**2. Negligence § 26—**

Motion for judgment of nonsuit on the ground of contributory negligence is properly granted when plaintiff's own evidence, considered in the light most favorable to him, so clearly establishes his own negligence as a proximate cause of his injury that no other reasonable conclusion can be drawn therefrom.

**3. Automobiles § 19—**

A pedestrian crossing a highway or street at an intersection not controlled by traffic signals must yield the right of way to vehicles upon the highway unless he is crossing within a marked or an unmarked crosswalk. G.S. 20-173(a), G.S. 20-174(a).

**4. Same—**

An unmarked crosswalk at an intersection, as that term is used in G.S. 20-173(a) and G.S. 20-174(a), is the area within an intersection which also lies within the lateral boundaries of a sidewalk projected across the intersection.

**5. Automobiles § 40—**

Evidence that plaintiff pedestrian crossed a T-intersection from the east in a line of travel approximating the projected center line of the intersecting street discloses that he was not walking within an unmarked crosswalk and was therefore required to yield the right of way to vehicular traffic. G.S. 20-174(a).

**6. Automobiles § 83—**

Plaintiff pedestrian's evidence to the effect that he was crossing a T-intersection from the middle of a street running south which had no crosswalks, that he saw defendant's car, traveling south, approaching him a block away at a speed of 50 to 55 miles per hour, that he kept his eyes on the car at all times but continued to walk at the same pace, and that he was struck by defendant's car within three feet of the boundary line of the southbound traffic lane, *is held* to disclose contributory negligence on the part of the pedestrian barring recovery as a matter of law.

**7. Automobiles § 40—**

Ordinary care requires that a pedestrian crossing a street or highway do more for his safety than merely walk at the same pace when he sees that an oncoming car is approaching him at a high rate of speed.

**8. Same—**

A pedestrian crossing a highway may not assume that a motorist thereon will comply with the traffic laws, including speed regulations, when he

observes that the oncoming car of such motorist is exceeding the speed limit.

**9. Pleadings § 24—**

The Supreme Court may in its discretion allow plaintiff to amend his complaint so that the pleadings conform to the proof where it appears that the defendant was not taken by surprise by such proof and that he failed to object to the admission thereof. Rule of Practice in the Supreme Court 20(4).

APPEAL by defendant from *Froneberger, J.,* at the 20 February Schedule B Civil Jury Session of MECKLENBURG.

The plaintiff sued for damages for personal injuries sustained by him when he, a pedestrian, was struck by an automobile driven by the defendant. The complaint alleges that the plaintiff was walking across Statesville Avenue at its intersection with Alma Court in the City of Charlotte and was walking within an unmarked crosswalk when he was struck and severely injured by the automobile driven by the defendant. The plaintiff alleges that the defendant was negligent in that he: (1) Failed to yield the right of way to the plaintiff; (2) failed to sound his horn; (3) failed to keep a proper lookout; (4) failed to keep his vehicle under proper control; and (5) drove at a speed greater than was reasonable under the circumstances. He alleges that these negligent acts and omissions were the proximate cause of the collision and of his injuries resulting therefrom.

The answer denies all material allegations of the complaint and pleads contributory negligence by the plaintiff in that, among other things, he: (1) Failed to keep a proper lookout; (2) walked from a place of safety into the path of the defendant's automobile when it was so close that a collision was unavoidable by the defendant; and (3) failed to get out of the lane for traffic in which the defendant was traveling when he saw, or should have seen, the automobile approaching.

The jury answered the issues of negligence and contributory negligence in the plaintiff's favor and awarded damages. From a judgment entered upon the verdict the defendant appeals, assigning as error the denial of his motion for judgment of nonsuit and certain portions of the charge to the jury and alleged erroneous omissions therefrom.

The defendant offered no evidence. The following is a summary of that introduced by the plaintiff, other than that relating to the nature and extent of his injuries, which were severe, including compound fractures of both legs:

The accident occurred at 10 p.m., on 20 February 1965, at the intersection of Statesville Avenue and Alma Court. This is a T

intersection, with Statesville Avenue being the top of the T and Alma Court running to the west. The plaintiff had been visiting friends at their residence on the east side of Statesville Avenue directly across the avenue from Alma Court. When struck by the defendant's automobile, the plaintiff was (according to a diagram drawn and offered in evidence by him) in the process of walking across Statesville Avenue, 21 feet in width, on a line which approximates the center line of Alma Court, extended across Statesville Avenue. He was then only three feet from where the west curb line of Statesville Avenue, extended, crosses the mouth of Alma Court. The plaintiff's diagram shows the mouth of Alma Court to be 38 feet wide but shows the court, itself, is 21 feet wide (23 feet according to the plaintiff's testimony), the side lines of the court flaring out as it meets the western line of Statesville Avenue. There was a street light at the northwest corner of the intersection.

The plaintiff, then 25 years of age and having a tenth grade education, was and is employed by the City of Charlotte.

When the plaintiff left the residence on the east side of Statesville Avenue, he walked to the edge of the avenue, looked in each direction and then began to walk across.

To the north of the intersection, 275 to 300 feet from it, there is a hill crest beyond which the plaintiff could not see. When he looked to his right, he saw the lights of the defendant's car, southbound, at the top of the hill. This was before he started to cross the avenue. He testified: "I did not take my eyes off it. The car was going 50 to 55 miles per hour, and it was a block away. I walked right across the street in front of it, keeping an eye on it at all times." Having demonstrated in the presence of the jury the speed at which he was walking, the plaintiff continued to testify as follows: "I would say I would continue across like this because there wasn't any traffic at that time. The way I just walked here is the way I walked that night. I walked at that same pace from the time I started until I got hit. As to whether I speeded up at all, when I realized that the car was gaining on me, I tried to get out of the way because I was almost across the street at the time I was hit. I didn't hear the horn blow, no brakes sliding."

At another point in his testimony, the plaintiff testified: "[T]he first thing I saw was some lights and as I continued across the street, I didn't know that the car was traveling as fast as it was until I got across the northbound lane and crossed to the southbound lane and that is when I realized that it was going faster than I first thought it were [sic], and then I tried to get out of the way of it. I didn't hear no horn, no brakes applied. He just had me trapped, and I was hit."

The posted speed limit at this intersection at the time of the accident was 35 miles per hour.

At about 3:30 p.m., approximately six hours prior to the accident, the plaintiff and two friends had consumed three-fourths of a pint of whiskey, he drinking an undesignated part of it. From that time to the time of the accident he had had nothing else to drink.

*J. Donnell Lassiter and Kennedy, Covington, Lobdell & Hickman for defendant appellant.*

*Wardlow, Knox, Caudle & Wade for plaintiff appellee.*

LAKE, J. It is elementary that upon a motion for judgment of nonsuit the evidence of the plaintiff must be taken to be true and must be considered in the light most favorable to him, resolving all contradictions therein in his favor, and giving him the benefit of every inference in his favor which can reasonably be drawn from it. Strong, N. C. Index, Trial, § 21. Obviously, the evidence of the plaintiff, so construed, is ample to support a finding of actionable negligence by the defendant. A judgment of nonsuit on the ground of the plaintiff's contributory negligence can be granted only when the plaintiff's evidence, considered in accordance with the above rule, so clearly establishes his own negligence as one of the proximate causes of his injury that no other reasonable inference or conclusion can be drawn therefrom. *Black v. Wilkinson,* 269 N.C. 689, 153 S.E. 2d 333; *Pruett v. Inman,* 252 N.C. 520, 114 S.E. 2d 360; *Bondurant v. Mastin,* 252 N.C. 190, 113 S.E. 2d 292. Conversely, if the plaintiff's own evidence does admit of no other reasonable conclusion, the defendant is entitled to have his motion for judgment of nonsuit granted and it is error to deny it. *Lowe v. Futrell,* 271 N.C. 550, 157 S.E. 2d 92; *Bradham v. Trucking Co.,* 243 N.C. 708, 91 S.E. 2d 891; *Garmon v. Thomas,* 241 N.C. 412, 85 S.E. 2d 589; *Sheldon v. Childers,* 240 N.C. 449, 82 S.E. 2d 396; *Edwards v. Vaughn,* 238 N.C. 89, 76 S.E. 2d 359; *Lyerly v. Griffin,* 237 N.C. 686, 75 S.E. 2d 730.

G.S. 20-173(a) provides:

> "Where traffic control signals are not in place or in operation the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection * * *"

G.S. 20-174(a) provides:

> "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked cross-

walk at an intersection shall yield the right-of-way to all vehicles upon the roadway."

The area included within the lateral boundary lines of Statesville Avenue and the lateral boundary lines of Alma Court, projected across Statesville Avenue, is an intersection within the definition of that term contained in G.S. 20-38(12). Consequently, the plaintiff was crossing Statesville Avenue at an intersection. This circumstance is not enough, however, to give him the right of way over vehicular traffic on Statesville Avenue. Under the foregoing statutes, the pedestrian crossing any highway, even at an intersection, must yield the right of way to vehicles upon the roadway unless the pedestrian is crossing within either a marked crosswalk or an unmarked crosswalk.

The term "unmarked crosswalk" is not defined in the Motor Vehicle Laws and this Court has not defined it heretofore. The term is obviously not coextensive with the term "intersection," for the Legislature has not provided that a pedestrian crossing a highway at an intersection shall have the right of way over vehicles, but has conferred such right of way only upon pedestrians crossing "within an unmarked crosswalk at an intersection." The statutes of many states define the term "unmarked crosswalk" as the area lying between the extensions of the sidewalk lines over a street at an intersection. In *Skaff v. Dodd*, 130 W.Va. 540, 44 S.E. 2d 621, the Supreme Court of West Virginia was faced with the task of defining the term, as used in an ordinance which, like the North Carolina statute, did not contain a definition of it. It said, "A crosswalk whether marked or unmarked is an extension of the sidewalk lines over streets at street intersections." See also *Ellis v. Glenn* (Ky.) 269 S.W. 2d 234, where the Court held a pedestrian was within an unmarked crosswalk when crossing the through street of a T intersection within what would be an extension of the sidewalk lines of the street forming the stem of the T. In *Van v. McPartland*, 242 Md. 543, 219 A. 2d 815, the statute defined a crosswalk as "that portion of a roadway ordinarily included within the prolongation or connection of the lateral lines of sidewalks at intersections." The Maryland Court rejected the contention that this statute permitted pedestrians by common usage to establish a crosswalk elsewhere and thus acquire the right of way over vehicular traffic.

We construe the term "unmarked crosswalk at an intersection," as used in G.S. 20-173(a) and G.S. 20-174(a), to mean that area within an intersection which also lies within the lateral boundaries of a sidewalk projected across the intersection. See G.S. 20-155(c) with respect to a "regular pedestrian crossing."

The diagram of the intersection of Statesville Avenue and Alma Court, prepared by the plaintiff and introduced in evidence as his Exhibit 1, shows no sidewalk on Alma Court. If this be a correct portrayal of the intersection, and for the present purposes we must take it to be so, there is no "unmarked crosswalk" crossing Statesville Avenue at this intersection. In any event, this diagram shows, as his line of travel across Statesville Avenue, a line which is a projection across Statesville Avenue of the center line of Alma Court. We are, therefore, compelled to conclude that the plaintiff's evidence shows conclusively that he was not "within an unmarked crosswalk" when struck by the defendant's automobile.

This is not to say that the plaintiff was acting unlawfully in crossing Statesville Avenue at that point or that he had no right to cross Statesville Avenue on the line which he was following through the intersection. G.S. 20-173(a) and G.S. 20-174(a) do not prohibit pedestrians from crossing streets on highways at places other than marked crosswalks or unmarked crosswalks at intersections. There is no showing in this record of any city ordinance affecting the right of the plaintiff to do so at this intersection. If, however, the pedestrian elects to cross a street or a highway at a place which is not a marked crosswalk and not an unmarked crosswalk at an intersection, these statutes require that he yield the right of way to vehicles. Thus, the plaintiff's evidence shows that he did not have the right of way over the oncoming automobile of the defendant.

Before starting to cross Statesville Avenue, the plaintiff saw the lights of the defendant's car at the crest of the hill 275 to 300 feet away, headed south, and underestimated its speed. Under these circumstances, it was not contributory negligence, as a matter of law, for him to start walking across the northbound lane of Statesville Avenue, which he did. However, he testified that he continued to watch the automobile as it traveled down to the intersection and did not take his eyes off it until the instant that it struck him. He further testified that he walked at the same pace from the time he started across the street until he was struck. In that interval, he noted that the car was going faster than he had at first supposed and observed its movement sufficiently to enable him to testify that the car was going 50 to 55 miles per hour on a street where the speed limit was 35 miles per hour. Though he testified that he tried to get out of the way, his evidence shows conclusively that the only effort made by him was to continue walking across the path of the oncoming vehicle at the same pace at which he started to cross the street. He was struck, according to his statement, when within three feet of the west line of Statesville Avenue.

The plaintiff was neither a child nor an elderly person unable to accelerate his pace quickly. He was a 25 year old man, with no physical disability and in full possession of his faculties, taking as true his statement that he had had nothing intoxicating to drink since 3:30 p.m. and inferring therefrom that he was not under the influence of any intoxicant at the time of the accident. The plaintiff's evidence leads inescapably to the conclusion that he could have avoided the collision, either by coming to a stop and yielding the right of way before entering the southbound lane of Statesville Avenue, or by accelerating his pace across it. Without ever taking his eyes off the oncoming vehicle, traveling at a speed substantially above the speed limit, he elected to do neither of these but to continue to walk at the same pace.

In *Garmon v. Thomas, supra,* this Court reversed a judgment for the plaintiff, holding that the action should have been nonsuited because his testimony showed that he walked across a highway, into the path of an oncoming vehicle, without seeing it. Here, the plaintiff walked into the path of an oncoming vehicle though he saw it approaching at a high rate of speed and did not even accelerate his own pace in order to escape a collision.

In *Blake v. Mallard,* 262 N.C. 62, 136 S.E. 2d 214, this Court affirmed a judgment of nonsuit on the ground of contributory negligence. There, the plaintiff was a 65 year old woman. She walked "normally" across the through street of a T intersection until she observed the oncoming car when it was only 45 feet from her and then began to run in order to cross its path without being struck. Except for the difference in age and sex and the consequent difference in the abilities of the respective plaintiffs to run or jump from a path of danger, and except that the plaintiff in this case at all times saw the approaching vehicle, the facts in this case and those in *Blake v. Mallard* are substantially similar. These differences in the facts of the two cases are not favorable to the present plaintiff. Sharp, J., speaking for the Court, said in *Blake v. Mallard,* "The law imposes upon a person *sui juris* the duty to use ordinary care to protect himself from injury."

Ordinary care surely requires a 25 year old man, under no disability, who observes that he is in the path of an automobile approaching at 50 miles per hour to do more for his own protection than merely walk at the same pace across the path of the automobile, when safety lies only some three or four steps ahead. Under such circumstances, ordinary care requires the young man to jump or run from the path of danger, even though there may be some risk or loss of dignity in that process.

The plaintiff in this case does not derive any benefit from the well established rule that, nothing else appearing, a pedestrian crossing a highway may assume that motorists thereon will conform to and comply with traffic laws, including laws regulating speed. See: *Gaskins v. Kelly*, 228 N.C. 697, 47 S.E. 2d 34; *Jones v. Bagwell*, 207 N.C. 378, 387, 177 S.E. 170; Blashford, Cyclopedia of Automobile Law and Practice, § 1432. Such presumption ceases when, as here, the pedestrian observes that the oncoming automobile is exceeding the speed limit.

The plaintiff's evidence leads inescapably to the conclusion that he did not use the care for his own safety that an ordinarily prudent man in the same circumstances would have used, and that his failure so to do was one of the proximate causes of his injuries. It was, therefore, error to deny the defendant's motion for judgment of nonsuit. Since we so conclude, we do not reach the questions presented by the defendant's exceptions to the charge of the court to the jury.

The plaintiff filed a motion in this Court for permission to amend his complaint to allege, as further specifications of negligence by the defendant, that the defendant drove his automobile in excess of the posted speed limit of 35 miles per hour, in violation of G.S. 20-141; that he failed to decrease the speed of his automobile when approaching and crossing an intersection; and that he failed to decrease the speed sufficiently to avoid colliding with the plaintiff. To allow such amendment merely makes the pleading conform to the proof. Obviously, the defendant was not taken by surprise by such proof. He did not object thereto on the ground of variance or otherwise. We have, in our discretion, allowed the motion to amend. See: Rule 20(4), Rules of Practice in the Supreme Court; *Stathopoulos v. Shook*, 251 N.C. 33, 110 S.E. 2d 452. The allowance of this amendment to the complaint does not, however, absolve the plaintiff from the consequences of his own contributory negligence.

Reversed.