MAGGIE A. BOWEN v. DANNY CLIFTON GARDNER, Appearing Herein
BY HIS Guardian Ad Litem, MILDRED D. GARDNER, and JAMES
GARDNER

No. 68SC185

(Filed 5 February 1969)

**1. Trial § 21— nonsuit — consideration of evidence**

On motion for judgment as of nonsuit at the close of plaintiff's evidence,
the court is required to consider the evidence in the light most favorable
to plaintiff.

**2. Automobiles § 62— negligence — nonsuit — striking pedestrian —
unmarked crosswalk**

Plaintiff pedestrian's evidence tending to show that she was struck by
a motorcycle operated by the minor defendant as she was crossing a city
street at night within the boundaries of an unmarked crosswalk at an in-
tersection and that defendant first saw the plaintiff when he was 20 feet
away from her, *is held* sufficient to withstand defendant's motion for
judgment as of nonsuit.

**3. Automobiles § 40— "unmarked crosswalk" defined**

The term "unmarked crosswalk at an intersection," as used in G.S.
20-173(a) and G.S. 20-174(a), means that area within an intersection
which also lies within the lateral boundaries of a sidewalk projected
across the intersection.

**4. Automobiles § 40— pedestrian — unmarked crosswalk**

Evidence considered in the light most favorable to plaintiff *is held* to
show that at the time of the collision complained of plaintiff was within
the lateral boundaries of a "sidewalk" projected across the intersection of
two city streets.

**5. Automobiles § 40— pedestrian in unmarked crosswalk**

It is the duty of a motorist to yield the right of way to a pedestrian
in an unmarked crosswalk at an intersection. G.S. 20-173(a).

**6. Automobiles § 40— pedestrian's duty at unmarked crosswalk**

Even though plaintiff was crossing an intersection within the lateral
boundaries of an unmarked crosswalk and therefore had the right of
way, plaintiff was under the duty, in the exercise of reasonable care for
her own safety, to keep a timely lookout for approaching vehicular traffic
and to see what she should and could have seen if she had looked before
starting across and during the crossing of the street.

**7. Automobiles § 83— contributory negligence — nonsuit — striking
pedestrian in unmarked crosswalk**

Even though plaintiff pedestrian had the right of way when crossing a
heavily traveled city street intersection at night within the boundaries of
an unmarked crosswalk, plaintiff's evidence discloses her contributory
negligence as a matter of law where she testified that she looked and
kept looking as she was crossing but did not see or hear the motorcycle
that struck her, and there was evidence that the motorcycle with its

lights burning had been coming toward her on a straight street for three or four hundred feet.

APPEAL by plaintiff from *Parker, J.,* April 1968 Session of WILSON Superior Court.

This is a civil action brought by the plaintiff to recover damages for bodily injuries received when she was hit by a motorcycle being driven by the minor defendant as she was attempting to cross Downing Street in Wilson, North Carolina, on foot. The plaintiff alleged that the defendant was negligent in that he (1) failed to keep a proper lookout, (2) operated the motorcycle at a highly dangerous and excessive rate of speed, (3) failed to yield the right of way to the plaintiff who was crossing Downing Street at the intersection of Downing and Jordan Streets, (4) failed in the operation of his motorcycle to turn out or take such other action as was necessary to avoid colliding with the plaintiff after he saw or should have seen that she was attempting to cross Downing Street, (5) failed to use due caution and circumspection and operated his motorcycle recklessly, carelessly and heedlessly and in disregard of the rights and safety of others using the street and more particularly the plaintiff crossing Downing Street, and (6) operated the motorcycle in the nighttime without a proper headlight. She further alleged that these negligent acts and omissions were the proximate cause of the collision and of her injuries resulting therefrom.

The defendant denied the plaintiff's allegations of negligence and further answered that the plaintiff was contributorily negligent in that she (1) failed to keep a proper lookout for vehicles lawfully and properly using the city street she was attempting to cross, (2) "failed to cross the street between intersections at a safe and proper place," (3) failed to yield the right of way to the defendant as was her duty, thereby violating G.S. 20-174(a).

The plaintiff replied that if she was found to be contributorily negligent, the defendant had the last clear chance to avoid the collision and resulting injuries to her and negligently failed to avail himself of it in that he (1) saw or by the exercise of due care should have seen that the plaintiff was attempting to cross the street, (2) knew or by the exercise of due care should have known the plaintiff was unaware of her peril in time to avoid the danger, (3) could have sounded a warning to the plaintiff, slowed or stopped the motorcycle, or turned it toward his left rather than to his right so that the collision could have been avoided, and (4) failed to use ordinary care and to exercise all of the means at his command to avoid the col-

lision. The plaintiff further alleged that these acts or omissions of the defendant were the proximate cause of the collision and the resulting injuries to the plaintiff.

Upon trial the plaintiff introduced evidence tending to show that she was 72 years old; that at about 7:30 p.m., after talking with several ladies at a car which was parked on the south side of Jordan Street near the southeast corner of its intersection with Downing Street, she left the car and started to cross Downing Street to visit a neighbor who lived in a house located on the southwest corner of the intersection of Downing Street and Jordan Street facing Downing Street. Downing Street, which is 31 or 32 feet wide, runs generally north and south and Jordan Street runs generally east and west. Before attempting to cross, she looked in both directions along Downing Street. While she was crossing, she continued to look from time to time in both directions. She could see over a block north on Downing Street from the intersection but neither saw nor heard any approaching traffic. She then began to cross Downing Street as quickly as she could. The evidence offered by plaintiff is not clear, however, as to whether she was walking or running or whether she headed straight across Downing Street toward the southwest corner of the intersection or at an angle across the street toward the front door of the neighbor's house where she was going to visit. She at no time saw nor heard the defendant and did not remember being hit by the motorcycle or anything else until she awoke in the recovery room of the hospital. She was wearing a black all-weather coat, but the intersection was well-lighted. There was evidence that there was no paved sidewalk on the south side of and running parallel to Jordan Street on either side of its intersection with Downing Street.

The defendant, Donny Clifton Gardner, testified on an adverse examination, which plaintiff introduced into evidence, that he lived with his father and mother in Wilson, that on the date in question he was traveling on a motorcycle owned by him, but the registration certificate thereof was in the name of his father, the defendant James Gardner. He was going south on Downing Street at a speed of about 30 miles per hour. He could see 100 feet ahead of the motorcycle as he was traveling with the aid of the headlight on the motorcycle. The headlight was on low beam. He first saw the plaintiff when he was 20 feet away from her. At this time she was running across Downing Street toward his right and was at the center of Downing Street at a point approximately 50 feet south of the centerline of Jordan Street. He did not blow his horn or give any warning but applied his brakes and turned to his right toward the west side of

Downing Street in the direction in which she was running in an effort to avoid hitting the plaintiff. The plaintiff at no time turned to look at him but continued running across the street. He collided with her at a point approximately 60 feet south of the centerline of Jordan Street and 7 or 8 feet east of the west curb of Downing Street.

Upon the close of the plaintiff's evidence, the defendants' motion for nonsuit was granted, and the plaintiff appeals from the judgment rendered thereon.

*Gardner, Connor & Lee by Cyrus F. Lee for plaintiff appellant.*

*Boyce, Lake & Burns by Eugene Boyce for defendant appellees.*

PARKER, J.

At the outset, it should be noted that the minor defendant testified that he spells his first name *Donny*. However, in the record and the briefs, including his own brief, the defendant's first name is spelled *Danny;* therefore, he will be referred to in this opinion as *Danny*.

Appellant assigns as error the ruling of the trial court in granting the defendants' motion for judgment as of nonsuit at the close of plaintiff's evidence.

This motion poses the following questions:

1. Does the plaintiff's evidence show negligence as alleged on the part of defendants, proximately causing injury to plaintiff; and if so

2. Does the plaintiff's own evidence establish her contributory negligence as alleged as a matter of law?

[1, 2] We are of the opinion and so hold that the plaintiff's evidence is sufficient to permit a jury to find actionable negligence on the part of the defendant Danny, proximately resulting in personal injuries to the plaintiff. We are required to consider plaintiff's evidence in the light most favorable to plaintiff on motion for judgment of nonsuit. *Anderson v. Carter,* 272 N.C. 426, 158 S.E. 2d 607. Plaintiff's evidence tends to show that the defendant Danny, who was operating the motorcycle owned by him and registered in the name of his father, the defendant James Gardner, did not see the plaintiff until he was within twenty feet of her. On the evidence in this case, the failure to do so was a failure to keep a proper lookout as alleged. The evidence further tends to show that the defendant Danny failed

to yield the right of way to the plaintiff, a pedestrian, who was crossing Downing Street in an unmarked crosswalk at an intersection.

[3, 4]    We come now to consider the second question. There were neither traffic signals nor marked crosswalks at the intersection of Jordan and Downing Streets. Downing Street runs generally north and south. Jordan Street runs generally east and west. There are paved sidewalks running north and south and parallel to Downing Street. There is an unpaved grass strip which one of the witnesses described as "what you would call a sidewalk" running east and west and parallel to Jordan Street and on the south side thereof where Jordan Street intersects with the east margin of Downing Street. The evidence reveals that the plaintiff was walking westward on the south side of Jordan Street on this area that is called the sidewalk before entering Downing Street at or near the intersection of Jordan Street with Downing Street. In *Anderson v. Carter, supra,* Justice Lake said, "We construe the term 'unmarked crosswalk at an intersection,' as used in G.S. 20-173(a) and G.S. 20-174(a), to mean that area within an intersection which also lies within the *lateral boundaries of a* sidewalk projected across the intersection."

[4, 5]    Although there is evidence otherwise, taking the evidence in the light most favorable to the plaintiff, at the time of the collision the plaintiff was in the lateral boundaries of what is called a sidewalk projected across the intersection of Downing Street as it is intersected by Jordan Street. Under the provisions of G.S. 20-173(a), it was the duty of the defendant to yield the right of way to plaintiff, a pedestrian, in an unmarked crosswalk, at an intersection.

[6]    Even though the evidence in the light most favorable to the plaintiff tended to show that plaintiff was crossing Downing Street in an unmarked crosswalk at an intersection of Jordan and Downing Streets, and therefore had the right of way, plaintiff was under the duty to exercise due care for her own safety. This duty required her to keep a proper lookout for vehicular traffic using the street and to exercise that degree of care for her own safety that a reasonably prudent person would under the same or similar circumstances. It was her duty, even though she had the right of way, in the exercise of reasonable care for her own safety to keep a timely lookout for approaching vehicular traffic on the street and to see what she should have and could have seen if she had looked before she started across

and during the crossing of Downing Street. In the case of *Rosser v. Smith,* 260 N.C. 647, 653, 133 S.E. 2d 499, the Supreme Court said:

"It was the duty of defendant both at common law and under the express provisions of G.S. 20-174(e) to 'exercise due care to avoid colliding' with Mrs. Rosser on the highway. *Landini v. Steelman,* 243 N.C. 146, 90 S.E. 2d 377. Even if we concede that plaintiff's evidence, and defendant's evidence favorable to him, would permit a jury to find that defendant failed to exercise due care to avoid striking Mrs. Rosser after she saw her, it is manifest that plaintiff's own evidence so clearly shows negligence on the part of his intestate, which proximately contributed to her injuries and death, that no other conclusion can be reasonably drawn therefrom.

"The law imposes upon a person *sui juris* the duty to use ordinary care to protect himself from injury, and the degree of such care should be commensurate with the danger to be avoided. *Holland v. Malpass,* 255 N.C. 395, 121 S.E. 2d 576; *Alford v. Washington,* 244 N.C. 132, 92 S.E. 2d 788; 65 C.J.S., Negligence, sec. 116, p. 706. It was the duty of Mrs. Rosser to look before she started across the highway. *Goodson v. Williams,* 237 N.C. 291, 296, 74 S.E. 2d 762, 766. It was also her duty in the exercise of reasonable care for her own safety to keep a timely lookout for approaching motor traffic on the highway to see what she should have seen and could have seen if she had looked before she started across the highway. *Garmon v. Thomas,* 241 N.C. 412, 416, 85 S.E. 2d 589, 592."

Plaintiff's evidence tends to show that she was going across Downing Street as "quick as I could, because it was a very busy street." The evidence is not clear as to whether she was walking or running. Plaintiff's evidence also tends to show that the speed limit there was 35 miles per hour, that the defendant's motorcycle was being operated at a speed of about 30 miles per hour after it had stopped at a service station about three or four hundred feet north of the intersection of Jordan and Downing Streets where the collision occurred. The street was straight, level, visibility was good, and the roadway was dry.

In the case of *Warren v. Lewis,* 273 N.C. 457, 160 S.E. 2d 305, it is stated:

"Justice Lake, in *Douglas v. W. C. Mallison & Son,* 265 N.C. 362, 144 S.E. 2d 138, has accurately and concisely stated the rule governing nonsuit on the ground of plaintiff's contributory negligence. 'A judgment of nonsuit on the ground of con-

tributory negligence may be entered only when the plaintiff's evidence, considered alone and taken in the light most favorable to him, so clearly establishes the defense that no other reasonable inference or conclusion can be drawn therefrom. *Cowan v. Transfer Co.,* 262 N.C. 550, 138 S.E. 2d 228; *Waters v. Harris,* 250 N.C. 701, 110 S.E. 2d 283; Strong, N. C. Index, Negligence, § 26. For such a ruling to be proper, it is also necessary that the answer has alleged the negligent act or omission on the part of the plaintiff which is so shown by the evidence. *Maynor v. Pressley,* 256 N.C. 483, 124 S.E. 2d 162; *Rodgers v. Thompson,* 256 N.C. 265, 123 S.E. 2d 785; *Messick v. Turnage,* 240 N.C. 625, 83 S.E. 2d 654; *Hunt v. Wooten,* 238 N.C. 42, 76 S.E. 2d 326; G.S. 1-139.' "

**[7]** In this case the plaintiff had the right of way and had the right to assume that the defendant in the operation of his motorcycle would keep a proper lookout and yield the right of way. However, the plaintiff negligently failed to see the defendant's approaching motorcycle and thus failed to see a danger which was or should have been obvious to her. She testified she looked and kept looking as she was crossing but did not see or hear the motorcycle that struck her. Although it was there with its light burning and had been coming toward her on a straight street for three or four hundred feet, she was, in her rush to cross the street, totally unaware of its approach on a street on which she testified she knew traffic was always heavy.

Plaintiff argues that the doctrine of last clear chance is applicable. Under the facts in this case, we do not agree.

We are of the opinion and so hold that the evidence clearly shows that the plaintiff was contributorily negligent as a matter of law in failing to see what she ought to have seen and in failing to use that degree of care for her own safety in crossing this busy street that an ordinarily prudent person would have used under the same or similar circumstances and that her failure to do so was one of the proximate causes of her injuries. The cases cited by plaintiff are factually distinguishable. *Warren v. Lewis, supra; Price v. Miller,* 271 N.C. 690, 157 S.E. 2d 347; *Blake v. Mallard,* 262 N.C. 62, 136 S.E. 2d 214; *Garmon v. Thomas,* 241 N.C. 412, 85 S.E. 2d 589; *Rosser v. Smith, supra.*

We are of the opinion that the judgment of nonsuit was properly entered.

Affirmed.

MALLARD, C.J., and BROCK, J., concur.