LOUISE McCOY v. JAMES LARRY DOWDY

No. 7210SC692

(Filed 25 October 1972)

1. Negligence § 35; Trial § 21— negligence of defendant — no contributory negligence of plaintiff as a matter of law — directed verdict improper

The trial court erred in directing a verdict for defendant in an action to recover damages for personal injuries where the evidence, taken in the light most favorable to plaintiff, tended to show that defendant was negligent in striking plaintiff pedestrian after entering a lighted intersection with his lights on without reducing his speed and where the evidence tended to show that plaintiff was not contributorily negligent as a matter of law in crossing a street in an unmarked crosswalk where she thought that defendant's automobile was far enough away not to hit her and where she began running in an attempt to escape when she saw that the defendant was not going to yield to her the right of way.

McCoy v. Dowdy

2. Damages §§ 3, 13— failure to show permanent injury — exclusion of statutory life table proper

Where plaintiff's injury was subjective and she failed to present expert evidence that she had suffered a permanent injury, the trial court did not err in refusing to admit into evidence the life table of G.S. 8-46.

APPEAL by plaintiff from *Canaday, Judge,* 20 March 1972 Session of WAKE Superior Court.

Plaintiff instituted this civil action to recover damages for personal injury suffered when defendant's automobile hit her as she was walking across New Bern Avenue, Raleigh, at its intersection with Seawell Avenue. The time was about 6:50 p.m. on 30 November 1969.

Motion by defendant for directed verdict on the grounds that the plaintiff failed to show actionable negligence of the defendant and did show her own contributory negligence as a matter of law was granted by the trial judge.

*Vaughan S. Winborne for plaintiff appellant.*

*Cockman, Alvis & Aldridge by Jerry S. Alvis for defendant appellee.*

CAMPBELL, Judge.

On a motion for directed verdict by the defendant, the court must consider the evidence in the light most favorable to the plaintiff, and must grant the motion only if as a matter of law the evidence is insufficient to justify a verdict for the plaintiff.

The motion presents substantially the same question for sufficiency as did a motion for an involuntary nonsuit under former G.S. 1-183. *Younts v. Insurance Co.,* 281 N.C. 582, 189 S.E. 2d 137 (1972).

The court summarized the proper test under former nonsuit procedure in *Bowen v. Gardner,* 275 N.C. 363, 168 S.E. 2d 47 (1969).

[1] Plaintiff's evidence in the light most favorable to her tends to show the following facts:

New Bern Avenue in the City of Raleigh, North Carolina, runs in an east-west direction; Seawell Avenue, running north-

south, dead-ends into New Bern Avenue forming a "T" intersection on the north side of New Bern Avenue. Seawell and New Bern Avenues both have sidewalks.

On the night of 30 November 1969 plaintiff was walking across New Bern Avenue from south to north on a line of travel which would be a prolongation of the Seawell Avenue sidewalk on the west side and perpendicular to New Bern Avenue. At about the same time, defendant was driving his automobile from east to west along New Bern Avenue, heading into the City of Raleigh. At a point somewhere midway in New Bern Avenue defendant's automobile struck the plaintiff. There were no traffic control lights at the intersection and no lines painted on the street indicating a pedestrian crosswalk. The intersection was illuminated by a street lamp, defendant's headlights were on, and there was no other traffic on the street at the time plaintiff was hit.

Plaintiff's testimony concerning the circumstances at the time when she crossed the street is generally confusing and in some points contradictory. However, contradictions are to be resolved in her favor. Various portions of the testimony are as follows:

" * * * When I first saw the car it was a good little ways from me. It was far enough away to not hit me. It was far enough away to not hit me."

"I didn't go out in the street at first, I was walking across the street. When I looked to see the car and where I first saw it, I was crossing New Bern Avenue, I was going straight across."

"The defendant's car was coming from my right. When I first saw it I was just walking across. I was already walking across, when I was walking I was fixing to cross.

Q. Fixing to cross, were you at the curb of the street, fixing to cross?

A. I was just about halfway the street.

Q. About halfway the street when you first saw it?

A. No, about halfway the street when I was crossing."

"When I saw him and he was as close as from me to you, that is when I started running and he got faster." [The distance was measured to be seventeen feet.]

"As I was crossing New Bern Avenue, I had gotten past the center line of that street when I first saw the defendant's car. I came through there out of the path. There was nothing that blocked my vision. I could see down New Bern Avenue going out of town."

" * * * This is the post I testified that the light [street light] was on. When I first saw the car of the defendant, I was a good ways from the post. I was halfway across the street when I first saw the car of the defendant. That was the first time I saw his car. I started running when I seen he was going to hit me. * * * "

Plaintiff's witness, Leona Patterson, who was walking with the plaintiff, testified:

" * * * When I first saw the car of the defendant I was fixing to cross, I had just stepped down off the curb and Louise was in front of me. I could reach out and touch her."

" * * * When I first saw it, I was standing at the curb, fixing to cross. The car was back up the street about half a block. When Louise got hit I wasn't quite to the center line and when she got hit I ran back and then I started hollering and waving my hands. There was no other traffic on the street at that time. When I waved my hand I stopped two cars that were going out of town."

" * * * As we all were going across the street, well, she was about as far from me as the first bench. . . (measured to be 25½ feet). While she was up there ahead of me as we were going across the street, that is my best recollection now. I am saying that if she was that far ahead of me, she was just about, she was on the other side of the center line. The defendant was traveling in the lane of travel close to the center of New Bern, and was going into town."

Other testimony tends to show that the plaintiff crossed New Bern Avenue directly in front of Seawell Avenue on a line straight across from the Seawell Avenue sidewalk. This evi-

dence taken as true places the plaintiff within the area which is an unmarked pedestrian crossing, thus giving her the right of way under G.S. 20-173 (a) and *Anderson v. Carter,* 272 N.C. 426, 158 S.E. 2d 607 (1968).

G.S. 20-38 (12) defines an intersection as the area embraced within the lateral boundary lines of two or more highways which join one another at any angle, whether or not one such highway crosses the other. G.S. 20-173 (a) provides that where traffic control signals are not in place or in operation the driver of a vehicle shall yield the right of way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection. In *Anderson v. Carter, supra,* the court defined an unmarked crosswalk as the prolongation of the lateral sidewalk lines.

A pedestrian who has the right of way at a crosswalk may not be held to be contributorily negligent as a matter of law for failure to see an approaching vehicle or for failure to use ordinary care for her own safety. The pedestrian is not required to anticipate negligence on the part of others. In the absence of anything which gave or should have given notice to the contrary, she was entitled to assume and to act upon the assumption, even to the last moment, that others would observe and obey the statute which required them to yield the right of way. *Bowen v. Gardner, supra.* In the *Bowen* case the pedestrian did not see the vehicle approaching, but the court held that this rule applies even where the pedestrian did see the vehicle before crossing.

In *Bowen* the plaintiff walked 24 to 26 feet across the street before she was hit. The court held that whether the speed of the motorcycle, its proximity, or manner of operation were such that plaintiff, simply by failing to see it, failed to exercise due care for her own safety is a jury question, and that since the circumstances permit opposing inferences, nonsuit as a matter of law should have been denied. In the case at bar plaintiff had walked about 25½ feet before she was hit.

In *Anderson v. Carter, supra,* the plaintiff was not walking within a pedestrian crosswalk, and thus did not have the right of way.

In the case at bar, viewing the evidence in the light most favorable to the plaintiff and resolving conflicts in her favor,

the evidence is sufficient to support a finding that she did not see the defendant until she had begun crossing and had reached the center of New Bern Avenue. Whether there were circumstances with respect to the operation of defendant's car which should have given her notice that he would not obey the law is a question which only a jury may answer.

But even if the plaintiff did see the defendant's car before she left the curb, her favorable evidence places the car half a block down the street. Whether its speed (estimated by plaintiff to have been about 50 miles per hour) was a circumstance which should have put her on notice that the defendant would not yield to her is also a proper jury question. The plaintiff's evidence concerning her location on the street when she first saw the defendant's car raises opposing inferences, and a directed verdict for contributory negligence as a matter of law is not proper.

The instant case is clearly distinguishable from *Anderson v. Carter, supra,* in that here the plaintiff had the right of way if the jury finds she was in a crosswalk and thought that the automobile was far enough away not to hit her; and, when she saw that the car was not going to yield to her the right of way, she began running in an attempt to escape. Her conduct is not unreasonable as a matter of law.

With respect to the defendant's negligence, the evidence tends to show that the intersection was illuminated by a street lamp, that defendant's headlights were on, that there was no traffic heading in defendant's direction at the time which could have momentarily distracted or blinded him, and that he never reduced the speed of his automobile. Such evidence is sufficient to go to the jury on the issue of defendant's negligence. A driver must exercise that degree of care which an ordinarily prudent person would exercise under similar circumstances; he must keep his vehicle under control and keep a reasonably careful lookout so as to avoid collision with persons and vehicles upon the highway; he is under the duty to see what he ought to have seen. The defendant had the duty to yield to the pedestrian. *Bowen v. Gardner, supra.*

[2] Plaintiff asserted as error failure of the trial court to admit into evidence the life table of G.S. 8-46. On the evidence which plaintiff has presented there was no error in this regard.

Evidence of future life expectancy is not admissible until the plaintiff has presented evidence that he has suffered a permanent injury. The only evidence concerning the permanency of plaintiff's injury was testimony of the plaintiff herself:

" * * * As a result of the accident I hurt all through my body now, and my head, and my leg too. I can't walk too good at times. They took the cast off in six weeks and I used the walker about six months. I am not able to get around all right now. I'm not because I hurt so bad through my body. Down across the bottom of my stomach."

In *Gillikin v. Burbage,* 263 N.C. 317, 139 S.E. 2d 753 (1965), plaintiff suffered a back injury which she said kept her from performing regular housework, made it difficult for her to stoop to retrieve objects from the floor, and which generally had caused continual pain since the accident. Her medical expert testified that such back injuries usually improve, but can re-occur. The court held that this evidence was insufficient to justify permanent damages.

Where the injury complained of is *subjective* and of such a nature that laymen cannot, with reasonable certainty, know whether there will be future pain and suffering, it is necessary in order to warrant an instruction which will authorize the jury to award permanent damages that there be offered in evidence testimony by expert witnesses, either from personal knowledge and examination or hypothetical questions based upon the facts, that the plaintiff may, with reasonable certainty, be expected to experience future pain and suffering.

Mrs. Gillikin did not "get around all right now" either, but even with expert medical testimony she fell short of proof of permanent injury. Mrs. McCoy did not offer any expert medical testimony concerning the permanency of her injury, and, her injury being *subjective* rather than *objective,* she has not carried the burden of proof on this issue. *Dolan v. Simpson,* 269 N.C. 438, 152 S.E. 2d 523 (1967); *Callicutt v. Hawkins,* 11 N.C. App. 546, 181 S.E. 2d 725 (1971); *Hood v. Kennedy,* 5 N.C. App. 203, 167 S.E. 2d 874 (1969).

Reversed.

Judges MORRIS and PARKER concur.